## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____

ANDREW MOBUS,

               Plaintiff,

                                      C.A. No. 1:17-cv-11011-GAO

v.

BARD COLLEGE,

               Defendant

_____

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
### MOTION TO COMPEL DISCOVERY RESPONSES

Pursuant to Rules 33, 34 and 37(a) of the Federal Rules of Civil Procedure, Plaintiff Andrew Mobus ("Plaintiff"), by and through his undersigned counsel, moves the Court for an order compelling Defendant Bard College ("Bard") to fully and completely respond to Plaintiff's First Request for the Production of Documents and First Set of Interrogatories.

### A.  NATURE OF THE CASE AND FACTS RELEVANT TO THIS MOTION

As set forth in the Complaint, Plaintiff filed the above referenced action seeking declaratory relief and monetary damages for violation of Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 et seq., ("Title IX") (and the rules, regulations, guidance, and advice promulgated thereunder), breach of contract and various tort claims arising out of a series of wrongful acts committed by Bard, to Plaintiff's extreme detriment while Plaintiff was a student at Simon's Rock, an unincorporated division of Bard.  Complaint, ¶1.

As a result of Bard's unlawful conduct, Plaintiff was expelled from Simon's Rock.  This occurred after and as the result of a complaint made to Simon's Rock by a former girlfriend of Plaintiff ("JG"), and a subsequent investigation, hearing, determination and appeal by Simon's

Rock, each phase of which was motivated by gender bias, showing a callous disregard for and a breach of Plaintiff's statutory and common law rights.  Complaint, ¶¶ 2, 58.

At the end of April 2014, JG met with her Academic Advisor, Rebecca Fiske ("Fiske"), to discuss her poor academic performance and the risks she faced of losing her scholarship. Complaint, ¶¶ 6(a), 21.  Upon information and belief, during that meeting, JG painted an extremely unflattering picture of Plaintiff, describing him as abusive and suggesting that as the reason for her academic problems.  JG told Fiske that she was thinking of ending the relationship, and Fiske encouraged her to do so.  A few days later, on May 2, JG abruptly ended her 10-week relationship with Plaintiff.

Fiske recounted the conversation she had had with JG to Susan Lyon ("Lyon"), who was at that time a member of a Committee investigating another student's complaint against Plaintiff (the "LF Complaint").  Complaint, ¶¶ 6(b), 22.  For no discernible reason other than hearing that JG claimed to have relationship problems with Plaintiff, Lyon instructed JG to appear before the Committee hearing the LF Complaint (the "LF Committee") on May 16.  JG knew nothing about the LF Complaint, and had not even begun to date Plaintiff until after the alleged incident giving rise to the LF Complaint occurred.  *Id*.  Moreover, Lyon knew that the LF Committee was soon to dismiss the LF Complaint (it did so only a few days later) because it was unsupportable by the credible evidence — as the LF Committee specifically acknowledged in the outcome letter that was issued at the conclusion of that investigation.  Although no transcript or notes of that May 16 meeting have yet been produced, JG has admitted that it was during her questioning by the LF Committee that she asserted, for the first time, that Plaintiff had raped her on February 28, which was two and a half months earlier.  *Id.*

A formal complaint letter was issued on May 23, 2014 (the "JG Complaint") which, perhaps not so coincidentally, was one day after the LF Committee on which Lyon served was compelled to dismiss all charges against Plaintiff for lack of evidence.  Complaint, ¶¶ 6(e), 24. A Committee was appointed to oversee the investigation and hearing of the JG Complaint (the "JG Committee").  Complaint, ¶6(f).  The original JG Committee was comprised of two women and one man.  On the eve of the hearing, however, the male member of the JG Committee was replaced by Francisca Oyogoa, a self-styled radical feminist who had previously refused to act as Plaintiff's school sponsored advocate in connection with the LF investigation on the ground that she could not be neutral.  The three faculty members who served on the JG Committee had little or no training with respect to Title IX investigations and hearings.  Complaint, ¶¶ 6(g), 27, 30.

Lyon essentially hijacked the JG Committee as Title IX Coordinator, even though she was not a member of such Committee nor permitted to influence its determination.  Complaint, ¶¶ 6(h), 47.  The JG Committee drafted two successive letters setting forth its findings and its recommendation, but Lyon rejected both letters as unsatisfactory, and then convened a meeting with the JG Committee. Complaint, ¶¶ 6(h), 47-50.  The factual findings contained in the JG Committee's two letters, setting forth their own factual findings after weighing of the evidence, find no expression in the letter written by Lyon (the "Lyon Outcome Letter"), which essentially repeated verbatim the factual assertions that JG had made in a detailed memorandum that she submitted to the JG Committee, but which the JG Committee refused to provide to Plaintiff. Most significantly, however, the two letters prepared by the JG Committee had recommended suspension, not expulsion. Complaint, ¶¶ 6(i), 51.  The Lyon Outcome Letter stated that the JG Committee had recommended expulsion.  Complaint, ¶¶ 6(i), 52.  The Lyon Outcome Letter also stated that the Dean of Campus Affairs, Robert Graves, had accepted its findings and

recommendations, but there is no written evidence that Dean Graves was ever asked to, or did in fact, approve the Lyon Outcome Letter or accept the recommendation of expulsion.  Complaint, ¶¶ 6(j), 52.

## B.  DISCOVERY DEMANDS AND RESPONSES; DISCOVERY CONFERENCE

On August 31, 2017, Plaintiff served his First Request for the Production of Documents and First Set of Interrogatories.  A copy of Plaintiff's Interrogatories is annexed hereto as Exhibit 1.  A copy of Plaintiff's Document Requests is annexed hereto as Exhibit 2.  On October 2, 2017, Bard served its Responses to Plaintiff's written discovery demands.  A copy of Bard's Responses to Plaintiff's Interrogatories is annexed hereto as Exhibit 3.  A copy of Bard's Responses to Plaintiff's Document Requests is annexed hereto as Exhibit 4.

On October 11, 2017, counsel for Plaintiff sent a letter to Bard's counsel describing in detail the deficiencies in Bard's responses to Plaintiff's written discovery demands (the "Deficiency Letter").  A copy of the Deficiency Letter is annexed hereto as Exhibit 5.  By letter dated October 23, 2017, counsel for Bard responded to the Deficiency Letter (the "Response Letter"), a copy of which is annexed hereto as Exhibit 6.

Because the Response Letter failed to resolve many of the issues raised in the Deficiency Letter, pursuant to Local Rule 37.1(a), counsel for the parties engaged in a discovery conference on November 29, 2017 at 4:00 p.m.  The discovery conference took place telephonically among Martin Desmery, Robert Piliero and Lisa Frey, counsel for Plaintiff, and Tobias Crawford, counsel for Bard, for approximately one hour.  The parties were able to resolve some, but not all, of the issues in dispute, and counsel for Bard agreed to consult his client and to advise counsel for Plaintiff whether any additional issues could be resolved without the need for motion practice.

On December 11, 2017, counsel for Bard sent an additional response to the Deficiency Letter (the "Second Response Letter") that resolved certain issues raised in the Deficiency Letter and the discovery conference. A copy of the Second Response Letter is annexed hereto as Exhibit 7. The remaining unresolved issues from the discovery conference are the subject of this motion.

## C. <u>STANDARD OF REVIEW</u>

The Court may exercise broad discretion in managing discovery matters. *Heidelberg Americas, Inc. v. Tokyo Kikai Seisakusho, Ltd.,* 333 F.3d 38, 41 (1st Cir. 2003). Discovery may be obtained as to any non-privileged material relevant to any party's claim or defense that is reasonably calculated to lead to the discovery of admissible evidence. *Equal Employment Opportunity Commission v. Baystate Medical Center, Inc.,* 2017 WL 4883458, at *1 (D. Mass Oct. 30, 2017). As a general matter, relevance must be broadly construed at the discovery stage such that information is discoverable if there is any possibility it might be relevant to the subject matter of the action. *Cherkaoui v. City of Quincy*, 2015 WL 4504937, at *1 (D. Mass July 23, 2015).

The proponent of a motion to compel discovery over an adversary's objection has the initial burden of showing its relevance. *Johansen v. Liberty Mutual Group, Inc.,* 2017 WL 6045419, at *1 (D. Mass Dec. 6, 2017). However, the party resisting discovery has the burden of showing specifically how each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive. *E.E.O.C. v. Baystate Medical Center, Inc., supra* at *1.

### D.  BARD HAS FAILED TO PROPERLY RESPOND TO PLAINTIFF'S WRITTEN DISCOVERY REQUESTS

#### 1.  *Bard's General Objection Nos. 1-3 To Plaintiff's Interrogatories And General Objection Nos. 3-4 To Plaintiff's Document Requests.*

Bard's General Objection No. 1 to Plaintiff's Interrogatories and General Objection Nos. 3-4 to Plaintiff's Document Requests are based on the same incorrect statement that Bard and Simon's Rock are separate, despite the indisputable facts to the contrary.

In General Objection No. 1 to Plaintiff' Interrogatories and No. 3 to Plaintiff' Document Requests, Bard objects to the extent the Interrogatories and Documents Requests seek information and documents "from Bard College in Annandale-on-Hudson, New York and not Bard College at Simon's Rock …in Great Barrington, Massachusetts."  Defendant attempts to achieve the same result through its General Objection Nos. 2 and 3 to Plaintiff's Interrogatories and General Objection No. 4 to Plaintiff's Document Requests, seeking to make a distinction between Bard College and Simons Rock.  Bard College is the named defendant in this action, but seeks to avoid providing full responses to Plaintiff's discovery requests on the asserted ground that "Simon's Rock is a separately accredited academic institution and has its own student body, campus, administrative officers, faculty, personnel, community standards and degree-granting authority."  Publicly available records describe a different reality.

Simon's Rock and Bard College are not separate institutions.  Bard's Answer to the Complaint quibbles with the assertion that Simon's Rock is a "division" of Bard College, for some reason preferring to refer to Simon's Rock as a "unit" of Bard College.  Answer, ¶ 1. Whether a division or unit, if indeed there is any distinction between the two, it is undisputed that they are not separate juridical entities.  Equally indisputable is the fact that the same individual, Leon Botstein, serves as both the President of Bard College and the Chief Executive

Officer of Simon's Rock.  Answer, ¶ 11.  Simon's Rock's website further confirms that Simon's Rock "is part of the Bard Network under the leadership of [Bard] President Leon Botstein…and with the guidance of the [Bard] Board of Overseers and the Bard College of Board of Trustees."

General Objection No. 1 to Bard's Response to Plaintiff's Interrogatories categorically states that "Defendant objects to the extent Plaintiff's interrogatories seek information from Bard College in Annandale-Hudson, New York and not Bard College at Simon's Rock."  As noted above, General Objection Nos. 2 and 3 to Plaintiff's Interrogatories seek to achieve the same geographically restrictive goal.  These objections should be rejected, and Bard should be required to provide full responses to all of Plaintiff's Interrogatories without geographical limitations.

Bard's Response to Plaintiff's Document Requests makes the same categorical objection based on geographical limitations.  *See* General Objection No. 3.  As indicated above, General Objection No. 4 to Plaintiff's Document Requests likewise seeks an unjustifiable and unreasonable geographical restriction.  Although these General Objections are broadly stated, its counsel's Response Letter creates ambiguity by asserting that the refusal is more limited, stating that "Request No. 26 [dealing with communications between Bard and the Office of Civil Rights for the U.S. Dept. of Education relating to sexual misconduct matters from January 1, 2010 to the present] is the only [document] request that we have limited based on the distinction between Bard College and Simon's Rock."  Bard's counsel's Second Response Letter creates even further ambiguity by indicating that counsel has "reached out" to two offices at Bard College and "confirmed that Bard College has no files in its exclusive possession" (emphasis added) concerning some, but not all, of the subjects of Plaintiff's Document Requests.  It seems that some attempt – perhaps half-hearted, perhaps not – may have been made to search for documents

responsive to some of Plaintiff's Document Requests, but Plaintiff should not be required to guess as to the thoroughness of Bard's search. Bard should be required to provide complete responses and document productions without geographical restriction to the Simon's Rock campus.

There is one aspect of Bard's Response to Plaintiff's Document Requests that is not ambiguous at all. Bard's counsel's Second Response Letter categorically reaffirms Bard's refusal to provide any information or documents in response to Document Request No. 26, calling for production of "all communications with the U. S. Department of Education Office of Civil Rights relating to sexual misconduct matters from January 1, 2010 to the present" with respect to its communications with the Department of Education. Bard's refusal to provide a full response to Document Request No. 26 is particularly significant, as it implicates one of the central allegations underlying all the claims that are asserted in the Complaint: that Bard's unlawful conduct was motivated by the Department of Education's threats of fiscal retaliation, including the loss of federal funding, against colleges that did not effectively combat sexual misconduct on campus. *See, e.g.,* Complaint, ¶¶ 4-5. Bard's attempt to avoid discovery relating to this issue should be rejected.

### 2. *Bard's General Objection No. 3 To Plaintiff's Interrogatories And General Objection No. 4 To Plaintiff's Document Requests*

Pursuant to Bard's General Objections No. 3 to Plaintiff's Interrogatories and General Objection No. 4 to Plaintiff's Document Requests, Bard refuses to search for and provide documents or information that may be within the possession of Bard's former employees, claiming that Plaintiff "seeks to impose discovery obligations on persons who are not parties to the action, including those no longer associated with Bard College or Simon's Rock."

However, in response to Interrogatory No. 2, Bard lists 10 employees who have specifically retained Bard's attorneys as counsel in connection with this matter.  Bard's counsel does not, however, identify, which of these 10 individuals are current employees and which are former employees.  In the Response Letter, Bard's counsel claims that while Bard has "worked with" the former employees listed in response to Interrogatory No. 2 in responding to Plaintiff's discovery demands, "Simon's Rock has not requested responsive documents in the exclusive possession of these non-parties, nor is it obligated to do so."

During the parties' discovery conference, counsel for Bard relented somewhat, agreeing to identify the employees listed in response to Interrogatory No. 2 — all of which are claimed to be clients of Bard's counsel — with respect to whom counsel is willing to require a search for responsive documents.  In the Second Response Letter, Bard's counsel stated that he confirmed that two of these individuals have no responsive documents, and that counsel will inquire as to whether six others have any responsive documents.  Unreasonably, however, counsel refuses to make a similar inquiry with respect to the other former employees who it purports to represent.

Bard should be compelled to request that the former employees who have specifically retained Bard's counsel search for documents responsive to Plaintiff's discovery demands. Although an employer is not required to request responsive documents from former employees over whom they have no control, in this case, because these former employees are represented by Bard's counsel, there is a level of control by Bard that would require them to have these specific former employees search their records for responsive documents.

### 3.  *Document Request Nos. 1-3*

Document Request Nos. 1-3 requested all documents relating to the LF Incident, the LF Claims, and the LF/Andrew Proceeding (as defined in the Document Requests).  All of these

Document Requests refer to a charge of sexual misconduct that had been made against Plaintiff, but which was dismissed for insufficiency of evidence.  Discovery relating to the LF Incident, the LF Claims and the LF/Andrew Proceeding are relevant to this action because, as JG has admitted in sworn testimony in another action: (1) JG was required to testify in the LF/Andrew Proceeding, despite her lack of knowledge with respect to the subject matter of that investigation; (2) her testimony was sought and elicited solely for the purpose of repeating to the Committee the negative comments that JG had previously communicated to her Advisor, Rebecca Fiske; and (3) it was during her testimony in that proceeding that JG first claimed to have been raped by Plaintiff, which is the principal allegation that led to his expulsion from Simon's Rock.[1]

In the Response Letter, Bard refused to produce any of the requested documents that are a part of LF's "educational record" on the ground that they are protected from disclosure by the Family Educational Rights and Privacy Act ("FERPA").  During the discovery conference, Bard's counsel admitted that several responsive documents would be withheld on FERPA grounds, but then, in the Second Response Letter, Bard's counsel stated that there is actually only one such document that is being withheld.  That document is the letter that was sent to LF advising her of the outcome of the investigation of her charge against Plaintiff.  Despite the obvious relevance of that document, Bard refused to produce it on FERPA grounds.

Bard's reliance on FERPA is misplaced.  That statute does not *ipso facto* insulate all "educational records" from discovery, but rather provides two alternative methods by which

---

[1] In the Second Response Letter, Bard's counsel suggests that Plaintiff's request for LF-related documents is based on "speculation" that the LF Claim was made in an attempt to justify her academic failings.  That is incorrect. The predicate for Plaintiff's requests relating to LF is as stated above.  It is JG, not LF, who was motivated to file a claim against Plaintiff to justify her poor academic performance, *see, e.g.,* Complaint ¶¶ 6(a), 6(b), 21, and those allegations are based on a combination of sworn admissions by JG herself and strong circumstantial evidence, not mere "speculation."

discovery can be granted.  First, Bard can make a request to LF identifying the documents that have been requested and seeking her agreement to allow production.  There is no indication that Bard has made any such request to LF.  The second circumstance under which educational records may be disclosed is pursuant to a court order after Bard gives notice to LF of its intention to make such disclosure so as to provide LF an opportunity to interpose an objection if she chooses to do so.  34 CFR § 9931(a)(9)(i).

Bard should be compelled to produce all requested documents, including the aforementioned outcome letter.  These documents are highly relevant to understanding the motivations of Bard and Lyon with respect to how Plaintiff was treated with respect to the LF Complaint and the JG Complaint.  These documents will show why Bard and Lyon acted against Plaintiff in the manner that they did.

### 4.  *Document Request Nos. 22 and 24*

Document Request No. 22 requested "All documents relating to JG's academic performance, disciplinary matters, assertions made by JG of improper acts and omissions by other students, faculty or administrative personnel at Bard, and departure from Bard."  Document Request No. 24 requested "All documents relating to JG's withdrawal from Bard in the Spring of 2014, including her failure to complete course work in the Spring 2014, her loss of scholarship funds, and any changes to her academic record made after the original Spring 2014 transcripts were prepared."

Bard has refused to produce any of these documents on the grounds that they are overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Bard has also objected to the extent these Document Requests seek educational records that are protected by FERPA and attorney-client privilege.

Bard should be compelled to produce documents responsive to these Document Requests. There is a very strong need for these documents as they go to the heart of this case. Specifically, these Document Requests all relate to JG's motivation to fabricate her claim of sexual misconduct by Plaintiff, which claim ultimately led to Plaintiff' expulsion. JG's motivations are highly relevant and there is no alternative method of obtaining these documents. The need for these documents is substantially greater than any perceived privacy rights under FERPA.[2]

### 5. *Document Request No. 25*

Document Request No. 25 requested "All documents relating to modifications to the Student Handbook from January 1, 2014 to present." Bard initially refused to produce any documents in response to this Document Request, but yielded somewhat in the Response Letter, stating that Bard "will produce the Student Handbooks that Simon's Rock circulated to its student body at the outset of the 2014-15, 2016-17, and 2017-18 academic years."[3] Bard still refuses, however, to produce communications and other documents relating to those modifications to the Student Handbook.

The central allegation in this case is that the manner in which the investigation, hearing, determination and appeal that led to Plaintiff's expulsion from Simon's Rock were conducted lacked fundamental fairness. Documents explaining the nature of and reasons for modifications that were made to the Student Handbook subsequent to the travesty that resulted in Plaintiff's expulsion are highly relevant and may well constitute admissions against interest. While these

---

[2] Closely related to this, during the discovery conference, Plaintiff's counsel asked Bard's counsel to include JG's email account at Simon's Rock as one of the custodian accounts to be searched for documents responsive to Plaintiff's Document Requests. Although the Second Response Letter indicates that such review has begun, no affirmative assurance was given that Plaintiff's request would be honored.

[3] Strangely, counsel for Bard did not state that they will produce the Student Handbook for Simon's Rock for the academic year 2015-16.

documents may be protected from disclosure under the attorney-client privilege, as indicated in Bard's response, the proper approach is to prepare a privilege log so that the requesting party and the Court have an opportunity to consider the bona fides of any claim of privilege.[4]

Accordingly, the Court should compel Bard to produce documents in response to Document Request No. 25 and produce a privilege log for those responsive documents that Bard contends are privileged.

## CERTIFICATE PURUSANT TO LOCAL RULE 37.1

The undersigned certifies that the provisions of Local Rule 37.1 have been complied with.  As further described above, a discovery conference pursuant to Local Rule 37.1(a) was held on November 29, 2017 between counsel for the parties.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court compel Bard to provide complete responses to Plaintiff's discovery demands within ten days of the Court's Order.

---

[4] Although not raised by Bard, any claim that such documents are inadmissible is irrelevant.  FRE Rule 407 provides that evidence of subsequent remedial measures is inadmissible to prove negligence or culpable conduct.  However, this Rule also provides that "the court may admit this evidence for another purpose," such as impeachment, or if disputed, the feasibility of precautionary measures.  *See Raymond v. Raymond Corp.,* 938 F.2d 1518 (1st Cir. 1991) (FRE Rule 407 does not apply to subsequent remedial measures by third parties).

ANDREW MOBUS

By His Attorneys,

PARTRIDGE SNOW & HAHN LLP

Dated: January 5, 2018

/s/ Martin P. Desmery
Martin P. Desmery (BBO #550133)
Partridge Snow & Hahn LLP
30 Federal Street, 7th Floor
Boston, MA 02110
(617) 292-7900
(617) 292-7910 FAX
mdesmery@psh.com

-and-

Robert D. Piliero (*Admitted pro hac vice*)
Lisa A. Frey (*Admitted pro hac vice*)
PILIERO & ASSOCIATES PLLC
444 Madison Avenue, Fourth Floor
New York, NY 10022
(646) 854-1273
piliero@pilierolaw.com
lfrey@pilierolaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on January 5, 2018.

/s/ Martin P. Desmery
Martin P. Desmery

3230498.1/14599-2