# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

ANDREW MOBUS,

     Plaintiff and Defendant-in-Counterclaim,

     v.

BARD COLLEGE,

     Defendant and Plaintiff-in-Counterclaim.

C.A. No. 1:17-cv-11011-GAO

**LEAVE TO FILE BRIEF IN EXCESS OF 20 PAGES GRANTED ON MARCH 29, 2018**

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Scott A. Roberts (BBO No. 550732)
sroberts@hrwlawyers.com
Arielle B. Kristan (BBO No. 677048)
akristan@hrwlawyers.com
HIRSCH ROBERTS WEINSTEIN LLP
24 Federal Street, 12th Floor
Boston, Massachusetts 02110
(617) 348-4300

Counsel for Defendant Bard College

Dated: April 1, 2019

## **Table of Contents**

INTRODUCTION ................................................................................................................. 1

BRIEF STATEMENT OF FACTS ....................................................................................... 2

ARGUMENT ...................................................................................................................... 18

    A.      Standard of Review ................................................................................ 18

    B.      Mobus's Material Misrepresentations Rendered Any Contract with Simon's Rock Voidable. ............................................................................................................... 18

    C.      Simon's Rock's Contractual Obligations to Mobus with Respect to Investigating JG's Allegations Were Exclusively Set Forth in Simon's Rock's Sexual Misconduct Policy, With Which the College Complied In Connection With Its Investigation of JG's Allegations .......................................................................... 23

        1.      Mobus Cannot Premise His Breach of Contract Claim on Title IX Administrative Guidance. ....................................................................... 24

        2.      The 2011 Annual Security Report was Not an Enforceable Contract. ..... 26

            a.      Mobus Cannot Establish that he Relied Upon the 2011 Annual Security Report as a Representation of Simon's Rock's Duties in Conducting a Sexual Misconduct Investigation in 2014. ............. 26

            b.      Mobus Cannot Assert a Private Right of Action Based on the 2011 Annual Security Report ................................................................. 29

CONCLUSION ................................................................................................................... 30

REQUEST FOR ORAL ARGUMENT ............................................................................... 30

**Table of Authorities**

1.  *Bleiler v. College of Holy Cross*, 2013 WL 4714340 (D. Mass. 2013) ........................... 27

2.  *Computer Sales Intern., Inc. v. Lycos, Inc.*, No. 05-10017-RWZ, 2005 WL 3307507 (D. Mass. Dec. 6, 2005) ...................................................................... 19

3.  *Doe v. Brandeis University*, 177 F.Supp.3d 561 (D. Mass. 2016)................................... 27

4.  *Doe v. College of Wooster*, 243 F. Supp. 3d 875 (N.D. Ohio 2017) ............................... 25

5.  *Doe v. Trustees of Boston College*, 892 F.3d 67 (1st Cir. 2018) ...................................... 26

6.  *Doe v. United States Dep't of Health & Human Servs.*, 85 F. Supp. 3d 1 (D.D.C. 2015) 29

7.  *Doe v. University of the South*, 687 F. Supp. 2d 744 (E.D. Tenn. 2009)......................... 26

8.  *Dziedzic v. State Univ. of N.Y. at Oswego*, No. 5:10-cv-1018, 2014 WL 7331926 (N.D.N.Y. Dec. 19, 2014)............................................................... 29

9.  *Gebser v. Lago Vista Independent School District*, 524 U.S. (1998) ............................... 26

10. *Guckenberger v. Boston University*, 974 F. Supp. 106 (D. Mass. 1997)................... 19, 27

11. *Joseph Martinelli & Co. v. Simon Siegel Co.*, 176 F.2d 98 (1st Cir. 1949)..................... 19

12. *Kenda Corp., Inc. v. Pot O'Gold Money Leagues, Inc.*, 329 F.3d 216 (1st Cir. 2003)19, 20, 22

13. *Mangla v. Brown University*, 135 F.3d 80 (1st Cir. 1998) ............................................... 27

14. *Massachusetts Institute of Technology v. Guzman*, No. 14-P-1803, 2016 WL 4395356 (Mass. App. Ct. Aug. 18, 2016)...................................................... 19

15. *McEvoy Travel Bureau, Inc. v. Norton Co.*, 408 Mass. 704 (1990) ................................ 19

16. *Moore v. Regents of the Univ. of Cal.*, No. 15-cv-05779-RS, 2016 WL 2961984 (N.D. Cal. May 23, 2016) ............................................................... 26

17. *Nash v. Trustees of Boston Univ.*, 946 F.2d 960 (1st Cir.1991) ...................................... 21

18. *NPS, LLC v. Ambac Assur. Corp.*, 706 F. Supp. 2d 162 (D. Mass. 2010)....................... 21

19. *Sax v. DiPrete*, 639 F. Supp. 2d 165 (D. Mass. 2009).................................................... 20

20. *Souders v. Mount Joseph Univ.*, 2016 WL 8671966 (S. D. Ohio Mar. 11, 2016)............ 29

21.   *VIP Mortg. Corp. v. Bank of America, N.A.*, 769 F. Supp. 2d 20 (D. Mass. 2011) .......... 18

22.   *Walker v. President and Fellows of Harvard College*, 840 F. 3d 57 (1st Cir. 2016) ....... 18

23.   *White Tower Mgmt. Corp., v. Taglino*, 302 Mass. 453 (1939) ......................................... 19

24.   *Z.J. v. Vanderbilt University*, 2018 WL 6694866 (M. D. Tenn. 2018) ........................... 29

25.   *Zimmerman v. Kent*, 31 Mass. App. Ct. 72 (1991) ..................................................... 21, 22

## **Federal Statutes**

20 U.S.C. § 1092(f) (the "Clery Act") ……………………………………………………………..29

## **Other Authorities**

Dear Colleague Letter, U.S. Dept. of Educ. (April 4, 2011)……………………………............25

Questions and Answers on Title IX and Sexual Violence, U.S. Dept. of Educ. (April 29, 2014) ………………………………………………………………………………………………........... 25

Dear Colleague Letter, U.S. Dept. of Educ. (September 22, 2017) …………………………..25

Letter from Catherine Lhamon, Assistant Sec'y for Civil Rights, U.S. Dep't of Educ., to Senator James Lankford (Feb. 17, 2016) …………………………………………………………............25

## INTRODUCTION

What is most remarkable about Plaintiff's Motion for Partial Summary Judgment (Doc. No. 112) (the "Partial Motion") and accompanying memorandum (Document No. 113) (the "Memorandum") is what they do not address, namely the voluminous evidence that Plaintiff Andrew Mobus ("Mobus") and his representatives misrepresented █████████████ ████████████ in connection with his application for admission to Bard College at Simon's Rock ("Simon's Rock" or the "College").  That evidence reflects that Mobus and his representatives deceived Simon's Rock as to Mobus's prior disciplinary history, ████████ ██████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ █████████████████████████████████  This campaign of deception forms the basis for the College's affirmative defense and counterclaim for rescission based on fraudulent inducement and establishes that – at the very least – there is a material dispute of fact as to the enforceability of *any* contractual terms between Mobus and the College that forecloses Mobus's request in the Partial Motion that the Court grant summary judgment on his breach of contract claim.

Even setting aside the College's fundamental defense to Mobus's contract claim, the evidence and argument he has set forth does not even approach the threshold for summary judgment.  Mobus claims that the College breached its contractual obligations in connection with its investigation and adjudication of allegations that Mobus violated the College's Sexual Misconduct Policy by, among other things, engaging in nonconsensual anal sex with another Simon's Rock student, JG.  The sole document delineating the College's obligations with respect to its handling of those allegations was the Sexual Misconduct Policy itself, and, as set forth in Defendant's Motion for Summary Judgment, filed on April 1, 2019, the College adhered

faithfully to those requirements.  It is in fact the College, not Mobus, that is entitled to summary judgment on Mobus's claim that the College breached the Sexual Misconduct Policy.

Evidently recognizing that he cannot establish that the College breached any provision of the Sexual Misconduct Policy, Mobus claims that the College was contractually bound by two guidance documents promulgated (and now rescinded) by the Department of Education and a 2011 report published by the College in connection with its obligations under the Jeanne Clery Disclosure of Campus Security Policy and Campus Crime Statistics Act (the "Clery Act").  None of these documents constituted the terms of the contractual relationship between Mobus and the College.  His arguments to the contrary misconstrue the plain language of those documents, contravene established law, and are flatly wrong.  Accordingly, they cannot serve as a basis for his breach of contract claim in any context, including his misguided and unfounded motion for summary judgment.

## **BRIEF STATEMENT OF FACTS**

### **Mobus Violates** ████████████████████████████████████████

For his freshman and sophomore years of high school, Mobus attended the Upper School at Collegiate School in New York ("Collegiate"), an all-boys school.  Statement of Additional Material Facts in Opposition to Plaintiff's Motion for Partial Summary Judgment (hereinafter "SAMF"), ¶ 1.  While at Collegiate, ████████████████████████████████ ███████████████████████████████████████████████████████ ████████████████

On November 11, 2011, ███████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████



Around this time,

At some point between December 2011 and January 2012,

In January 2012,

On or about January 23, 2012,



**Mobus Attends** ███████████████ **Program, and** ███████████



**Mobus Violates** ███████████████████████████████████████

Mobus enrolled in the 11ᵗʰ grade at ██████ in January 2013.  SAMF, ¶ 16. ██████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████

*Mobus Violates* ███████████████████████████

███████████████████████████████████████████████████

███████████████████████████  Specifically, ██████ 2012/2013 Student Handbook ("██████

Handbook") stated that ████████████████████████████ that students

were thus expected to refrain ██████████████ and that students who violated the policy

may face "disciplinary consequences."  *Id.* ██████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████

███████████████████████████████████████████



*Mobus Violates*

policies barred



policies also restricted

SAMF, ¶ 24.   policies barred

**Mobus Attempts to Obtain Readmission**

33.



**Mobus Gains Admission to Simon's Rock by Submitting a False and Misleading Application**

██████████████████████████████████████

████████████████████████████████████████

██ This assertion was misleading in multiple respects. ███████████████

██████████████████████████████████████

████████████████████████████████████████

███████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████

███████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████

████████████████████

█████████████████████████████████████

██████████████████████████████████

█████████████████████████████████████

█████████████████████████████████████

████████████████████████████████████████

███████████████████████████████

█████████████████████████████████████

████████████████████████████████████████





---

[4]     In his Complaint, Mobus alleges that during the admissions process, he and his father "fully disclosed" Mobus's academic, psychological, emotional, and social history "in great detail."  SAMF, ¶ 52.  Ms. Taylor was the only person on Simon's Rock's Admission Committee who spoke with Mobus and his father, and she testified that they did not disclose any of the following information:



███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████

### Simon's Rock Relies to Its Detriment on Mobus's Misrepresentations During the Admissions Process

Simon's Rock is an "early college," and it is designed for students who demonstrate the academic, social, and behavioral abilities to commence their undergraduate studies after the tenth or eleventh grade.  SAMF, ¶ 53.  Because of the design, nature, and mission of the College, Simon's Rock has a thorough and rigorous application process.  *Id*. at ¶ 54.  To be considered for admission, a candidate must submit an application that includes, among other things, (a) detailed biographical information; (b) the statement of a parent or guardian attesting to the candidate's relationships with adults, emotional and social maturity, and readiness to live away from home; (c) a school report completed by the candidate's guidance or college counselor, which speaks to the candidate's academic standing and social performance in high school, accompanied by a transcripts of grades since the ninth grade; (d) two essays; and (e) three letters of recommendation, including two from teachers of core academic subjects and one from someone who knows the candidate in a non-academic context.  *Id*.  Additional recommendations submitted with the candidate's application, whether from teachers, advisors, or independent educational consultants, are read and considered.  *Id*.   The candidate must also sit for an interview with one of the College's Admission Officers.  *Id.*

Simon's Rock's application requirements are designed to ensure that a candidate is prepared to participate in and benefit from the College's highly engaged and rigorous academic

15

program, and that the candidate will make a positive and constructive contribution to the campus community.  SAMF, ¶ 55.  In evaluating a candidate, the College's Admission Committee relies substantially on the candidate's application materials and interview to ascertain whether they indicate that a candidate will be able to succeed academically at Simon's Rock, and to comply with Simon's Rock's community standards, including those described in its Student Handbook.  *Id.*  As such, it is critical that a candidate's application and supporting materials are factually true and honestly presented, and, for that reason, the College's application expressly requires that a candidate certify the veracity of his or her application materials.  *Id.*

As the five-member Admission Committee began its deliberations on Mobus's application, three members of the Committee had ███████████████████, and the fourth member was ██████████████████████████████████.  SAMF, ¶ 56.  Only one member of the Committee – ███████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████

Simon's Rock relied on the multiple, material misrepresentations made by Mobus and his representatives during the admissions process in deciding to admit him for the Spring 2014 semester.  SAMF, ¶ 57.  Had Mobus submitted an application to Simon's Rock that honestly and fully described his academic performance, disciplinary history, behavioral issues, and previous admissions history, the College's Admissions Committee would have rejected his request for

admission.  *Id*. at ¶ 58.  Further, had Simon's Rock learned of the misrepresentations and

omissions in Mobus's application materials during the application process, his dishonesty alone

would have compelled his rejection.  *Id*.

### During Mobus's First Semester at Simon's Rock, Two Female Students Accuse Him of Sexual Misconduct and He is Expelled

Mobus began attending Simon's Rock in January 2014.  *See* Affidavit of Lisa A. Frey in

Support of Mobus's Motion for Summary Judgment (Document No. 115) (hereinafter "Frey

Aff."), Ex. 8.  Soon after Mobus matriculated at Simon's Rock, two students came forward with

reports that Mobus had engaged in sexual misconduct.

On March 6, 2014, Simon's Rock student LF reported to Marty Checchi, Simon's Rock's

Title IX Coordinator, that Mobus had engaged in sexual misconduct toward her in February

2014.  *See* Frey. Aff., Ex. 18.  The College's Sexual Misconduct Committee investigated LF's

allegations pursuant to the Sexual Misconduct Policy set forth in the College's 2013-2014

Student Handbook, and determined that it was "unable to conclude by a preponderance of the

evidence whether the interaction [between Mobus and LF] included behavior that violates the

sexual misconduct policy."  *See* Frey Aff., Exs. 14, 24.

During its investigation of LF's allegations, the Sexual Misconduct Committee

interviewed another Simon's Rock student, JG.  *See* Frey Aff., Ex. 1 (Lyon Dep. 259:18-261:18);

Ex. 30.  JG reported to the Sexual Misconduct Committee that Mobus had anally penetrated her

without consent, taken sexual pictures of her without consent, and retained those photographs

after she asked him to delete them.  *See* Frey Aff., Ex. 40.  Having learned of JG's allegations,

Simon's Rock initiated an investigation of JG's allegations, and based on its determination that

his actions had violated the Sexual Misconduct Policy, expelled him from the College.  *See* Frey

Aff. Ex. 54.

17

Mobus's Complaint, and in particular the contract claim on which he has moved for partial summary judgment, is based on his unfounded grievances with how Simon's Rock conducted the investigation of JG's allegations.  For the reasons set forth below, while it is clear that Mobus is disappointed in how his time at Simon's Rock ended, his breach of contract claim lacks merit, and he is not entitled to summary judgment on <u>any</u> of its elements.

## ARGUMENT

### A.      Standard of Review

Mobus is entitled to summary judgment only if "all of the pleadings and supporting documents, viewed in a light most favorable to [the College], present no genuine issue of material fact, and [Mobus] is entitled to judgment as a matter of law."  *VIP Mortg. Corp. v. Bank of America, N.A.*, 769 F. Supp. 2d 20, 24 (D. Mass. 2011).  "A genuine issue is one that can 'be resolved in favor of either party' and a material fact is one which 'has the potential of affecting the outcome of the case."  *Walker v. President and Fellows of Harvard College*, 840 F. 3d 57, 61 (1st Cir. 2016)(internal quotation marks and citation omitted).  As a plaintiff moving for summary judgment, Mobus bears a "higher burden" and "[t]he court may grant summary judgment to [Mobus] only where the evidence is conclusive and no reasonable fact-finder could find otherwise."  *VIP Mortg. Corp.,* 769 F. Supp. 2d at 24.  Mobus cannot meet this substantial burden.

### B.      Mobus's Material Misrepresentations Rendered Any Contract with Simon's Rock Voidable.

It is well established that the relationship between a private college and a student is "contractual in nature," with the terms of that contract reflected in the college's written policies. *Guckenberger v. Boston University*, 974 F. Supp. 106, 150 (D. Mass. 1997).  *See also Massachusetts Institute of Technology v. Guzman*, No. 14-P-1803, 2016 WL 4395356, at *5

(Mass. App. Ct. Aug. 18, 2016)("The terms of the student-university relationship are informed by, inter alia, written policies.").  It is similarly well established that a contract induced by fraud is voidable at the election of the party whose assent to the contract has been wrongfully obtained. *See also Kenda Corp., Inc. v. Pot O'Gold Money Leagues, Inc*., 329 F.3d 216, 224 (1st Cir. 2003) (fraud in the inducement can serve as grounds for rescinding a contract); *McEvoy Travel Bureau, Inc. v. Norton Co*., 408 Mass. 704, 712–13 (1990) ("We continue to believe that parties to contracts . . . should deal with each other honestly, and that a party should not be permitted to engage in fraud to induce the contract."); *White Tower Mgmt. Corp., v. Taglino*, 302 Mass. 453 (1939) ("[The seller] ought not to be permitted to take the benefit of false and fraudulent misrepresentations made by its agent.").  As stated by the First Circuit, "fraud in the inception of a contract . . . renders [the contract] voidable at the election of the person defrauded, with the result that if the defrauded party to a contract breaks it before he discovers the fraud, he may nevertheless assert the fraud as a defense as soon as he discovers it, and demand rescission on that account when sued for breach of contract."  *Joseph Martinelli & Co. v. Simon Siegel Co*., 176 F.2d 98, 100 (1st Cir. 1949).  *See also Computer Sales Intern., Inc. v. Lycos, Inc*., No. 05-10017-RWZ, 2005 WL 3307507, at *7 (D. Mass. Dec. 6, 2005) (noting that, if defendant were to prevail on its counterclaim for fraud in the inducement, "the agreements would be voidable").

     While Mobus focuses in the Memorandum on the College's alleged breaches of its "contractual obligations," Mobus ignores completely that the fraudulent statements made to Simon's Rock in connection with his application for admission bar any recovery on his breach of contract claim.  Simon's Rock has pleaded both a counterclaim for rescission based on fraudulent inducement and an affirmative defense based on Mobus's fraudulent statements during the admissions process, on which Simon's Rock relied in allowing Mobus to matriculate.

*See* Amended Answer (Document No. 80), Third Affirmative Defense and Counterclaim.  To

succeed on either its counterclaim or affirmative defense, Simon's Rock must establish that (1)

Mobus or his representatives[5] made a knowingly false representation with intent to deceive; (2)

the misrepresentation was material to the College's decision to admit Mobus and thereby enter

into a contractual relationship with him; (3) the College reasonably relied on the

misrepresentations; and (4) the College was injured as a result of that reliance. *See Kenda Corp.,*

329 F.3d at 225 (setting forth elements of fraudulent inducement claim).  *See also Sax v.*

*DiPrete*, 639 F. Supp. 2d 165, 173 (D. Mass. 2009) ("In order to establish a claim for fraudulent

inducement, the plaintiff must establish the elements of common law deceit, which include,

misrepresentation of a material fact, made to induce action, and reasonable reliance on the false

statements to the detriment of the person relying.").  Evidence obtained in discovery establishes

that there is at the very least a material dispute as to each of these elements, thus barring any

entry of summary judgment for Mobus on his contract claim.  *See also Sax v. DiPrete*, 639 F.

Supp. 2d 165, 173 (D. Mass. 2009) (evidence supporting claim for fraudulent inducement to

enter arbitration agreement created dispute as to material fact with respect to existence of

arbitration agreement).

 *First*, the record is replete with knowing and intentional misrepresentations made by

Mobus, his father, and Mr. van Renesse to Simon's Rock.  *See* SAMF, ¶¶ 41-52. ████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████████

---

[5] "Principles of contract law permit rescission of a contract even when the misrepresentations at issue were made by a non-party to the contract."  *Kenda Corp., Inc. v. Pot O'Gold Money Leagues, Inc.*, 329 F.3d 216, 224 (1st Cir. 2003)

██████████████████████████████████████████████████

████████████████████████████████████████████

████████   *See Zimmerman v. Kent*, 31 Mass. App. Ct. 72, 77–78 (1991) ("Where the plaintiff

proves a statement made, as of the party's own knowledge, which is false, provided the thing

stated is not merely a matter of opinion, estimate, or judgment, but is susceptible of actual

knowledge ... it is not necessary to make any further proof of an actual intent to deceive."

(internal quotation marks omitted)).

*Second*, there is ample evidence that Mobus's misrepresentations during the admissions

process were material to the College's decision to admit Mobus and thereby enter into a

contractual relationship with him.  A misrepresentation is material if it "would be likely to

induce a reasonable [party] to manifest [its] assent" to a contractual relationship.  Restatement,

2d, Contracts, § 162(2) (1981).[6]  *See also Zimmerman*, 31 Mass. App. Ct. at 78 (defining

materiality as "whether a reasonable man would attach importance [to the fact not disclosed] in

determining his choice of action in the transaction in question" (internal quotation marks

omitted)).  Simon's Rock's unique status as an "early college" requires that it thoroughly and

rigorously vet students who wish to enter the College community.  *See* SAMF, ¶¶ 53-55.  This

process is designed to ensure that prospective students are prepared to participate in and benefit

from the College's highly engaged and rigorous academic program, and that the candidate will

make a positive and constructive contribution to the campus community.  *See id*. at ¶ 55.  In

evaluating prospective students, the College's Admissions Committee relies substantially on a

prospective student's application materials and interview to ascertain whether they can meet

---

[6]     Massachusetts courts follow the model of the Restatement of Contracts in evaluating claims for fraud in the inducement.  *NPS, LLC v. Ambac Assur. Corp*., 706 F. Supp. 2d 162, 169 (D. Mass. 2010).  *See also Nash v. Trustees of Boston Univ*., 946 F.2d 960, 967 (1st Cir.1991) (quoting the Second Restatement of Contracts with respect to elements of claim for fraudulent inducement).

these community standards.  *Id*.  Mobus's misrepresentations concealing and distorting the serious academic and disciplinary issues in his past were likely to induce the College to admit him (and in fact did induce the College to admit him) and therefore meet the requirement of materiality.  *See* Restatement, 2d, Contracts, § 162(2) (1981); *Zimmerman*, 31 Mass. App. Ct. at 78.

*Third*, the College relied on the misrepresentations made by Mobus and his representatives, *see* SAMF, ¶¶ 56-58, and such reliance was reasonable.  The College was entitled to rely upon Mobus's admissions materials, especially where he averred that the information he presented was "factually true" and "honestly presented."  *Id*. at ¶ 42.  For reliance to be reasonable, a statement need only "not be preposterous or palpably false."  *Kenda Corp., Inc.,* 329 F.3d at 227.  Mobus's misrepresentations – while fundamentally false – were not obviously so, and therefore the College was reasonable in its reliance on them.

*Fourth*, the College was injured by its reliance on the misrepresentations made by Mobus and his representatives in the admissions process.  Those misrepresentations stymied Simon's Rock's efforts – through its thorough and rigorous admissions process – to discern whether Mobus would be able to make a positive and constructive contribution to the campus community while complying with the College's community standards.  SAMF, ¶¶ 54-58.  Through his deceit, Mobus prevented Simon's Rock from discovering the myriad red flags in his educational and disciplinary history and allowed him to obtain access to a community in which he did not rightly belong.  *See id*.  Just months after he entered that community, he was accused by two students of sexual misconduct and expelled after the College determined that he had engaged in anal sex with JG without consent, taken sexual photographs of her without her consent, and retained those photographs after she asked him to delete them.  *See* Frey Aff., Exs. 18, 14, 24,

40.  There can be no more clear detriment to a small college community such as Simon's Rock than the admission of a student who is not fit to participate constructively in that community and who ultimately commits sexual assault against one of its members.

Any one of the knowing and intentional misrepresentations made by Mobus and his misrepresentatives constitutes grounds for rescission of any contract between Simon's Rick and Mobus; taken together they evidence a calculated campaign of deceit intended to obtain a "last shot" for Mobus.  *See* SAMF, ¶¶ 41-52.  That campaign, having been revealed in stunning detail during discovery in this litigation vitiates any attempt by Mobus to enforce any contract with the College.  As such, the Court should deny Mobus's motion for partial summary judgment on his contract claim.

### C.	Simon's Rock's Contractual Obligations to Mobus with Respect to Investigating JG's Allegations Were Exclusively Set Forth in Simon's Rock's Sexual Misconduct Policy, With Which the College Complied In Connection With Its Investigation of JG's Allegations.

As set forth above, Mobus is not entitled to summary judgment as to the existence of *any* contract between him and Simon's Rock, and he has not come anywhere close to satisfying his heightened burden of affirmatively establishing a breach of contract by the College.  Indeed, even if a contract between Mobus and Simon's Rock is assumed to exist under the terms of the Sexual Misconduct Policy in its 2013/2014 Student Handbook that governed Mobus's disciplinary proceedings, it is Simon's Rock – not Mobus – that is entitled to summary judgment, as the substantial (and indisputable) evidence establishes that the College complied in full with that policy.  *See* Defendant's Motion for Summary Judgment filed on April 1, 2019.

Evidently recognizing the infirmity of his claim that Simon's Rock breached the Sexual Misconduct Policy, Mobus improperly attempts to expand the scope of the College's "contractual" obligations to include two guidance documents promulgated (and now rescinded)

by the Department of Education (the "Department") and a 2011 Annual Report Concerning the

Student Right-to-Know and Campus Security Act published by the College (the "2011 Annual

Security Report").[7]   *See* Memorandum, pp. 5-6.   Neither of these sources impose contractual

obligations on Simon's Rock and, accordingly, cannot serve as a basis for summary judgment on

Mobus's claim for breach of contract.

### 1.     *Mobus Cannot Premise His Breach of Contract Claim on Title IX Administrative Guidance.*

Mobus improperly attempts to premise his breach of contract claim on Simon's Rock's

alleged noncompliance with two Department guidance documents – its April 4, 2011 "Dear

Colleague Letter" (the "2011 DCL") and its April 2014 "Questions and Answers on Title IX and

Sexual Violence" (the "2014 Q&A").   *See* Memorandum, pp. 13, 16.   In doing so, Mobus

misstates the language of the Student Handbook, misrepresents the status of the 2011 DCL and

2014 Q&A, and ignores clear legal precedent.

Mobus's claim for "breach" of the 2011 DCL and 2014 Q&A is premised on his

misleading assertion that, in the Student Handbook, Simon's Rock "*specifically incorporated* by

reference Title IX rules and regulations promulgated thereunder."   *See* Memorandum, p. 5

(emphasis added).   What the Student Handbook actually says is that "College policy *is consistent

with . . . federal statutes and regulation*, including but not limited to . . . Title IX of the

Education Amendments of 1972."   *See* Frey Aff., Ex. 19, BCSR-0003680 (emphasis added).

Setting aside the issue of whether such a purely descriptive statement can ever constitute a

contractual promise, this language certainly cannot be understood to create a contractual

---

[7]       Mobus, who attended Simon's Rock for four months in 2014, disingenuously omits the publication date of the 2011 Annual Security Report from the Memorandum, *see* Memorandum, pp. 5-6, but the sole document he has submitted in support of his assertion that Simon's Rock breached what he terms the "Student-Right-to-Know Statement" is dated *October 2011*, over two years before Mobus matriculated at Simon's Rock.   *See id.*, citing to Frey Aff. 59.   The College will refer to this document as an Annual Security Report, as is the typical practice for annual reports published pursuant to the Clery Act.

obligation to Mobus to comply with the 2011 DCL and 2014 Q&A, because those documents are not "federal statutes [or] regulations."  The 2011 DCL and the 2014 Q&A are designated by the Department as "significant guidance documents" under the Office of Management and Budget's Final Bulletin for Agency Good Guidance Practices, and, as such, did not have the force of law, even before they were rescinded in 2017.  *See* Dear Colleague Letter, U.S. Dept. of Educ. (April 4, 2011) at note 1[8]; Questions and Answers on Title IX and Sexual Violence, U.S. Dept. of Educ. (April 29, 2014) at note 1.[9]  *See also Doe v. College of Wooster*, 243 F. Supp. 3d 875, 892 (N.D. Ohio 2017) (Department of Education guidance is "not legally binding").  The Department removed any doubt as to the status of the 2011 DCL and 2014 Q&A when it rescinded these "statements of policy and guidance" in 2017.  *See* Dear Colleague Letter, U.S. Dept. of Educ. (September 22, 2017).[10]  *See also* Letter from Catherine Lhamon, Assistant Sec'y for Civil Rights, U.S. Dep't of Educ., to Senator James Lankford (Feb. 17, 2016) (the 2011 DCL "did not have the "force and effect of law;" and further "The Department does not view such guidance to have the force and effect of law.").[11]  They are policy guidance, not "federal statutes [or] regulations," and therefore the language of the Student Handbook cannot be reasonably understood to have constituted a contractual promise to comply with the 2011 DCL and/or the 2014 Q&A.

Moreover, Mobus's attempt to assert a claim based on the College's alleged noncompliance with the 2011 DCL or 2014 Q&A runs afoul of unequivocal precedent foreclosing private rights of action based on Title IX administrative requirements and guidance,

---

[8]      Available at https://www2.ed.gov/about/offices/list/ocr/letters/colleague-201104.pdf
[9]      Available at https://www2.ed.gov/about/offices/list/ocr/docs/qa-201404-title-ix.pdf.
[10]     Available at https://www2.ed.gov/about/offices/list/ocr/letters/colleague-title-ix-201709.pdf.
[11]     Available at
https://www.lankford.senate.gov/imo/media/doc/DEPT.%20of%20EDUCATION%20LANKFORD%20LETTER%202-17-16.pdf

including the 2011 DCL and the 2014 Q&A.  *See Gebser v. Lago Vista Independent School District*, 524 U.S. 274 (1998) (no implied right of action for violation of Title IX administrative requirements); *Doe v. University of the South*, 687 F. Supp. 2d 744, 751 (E.D. Tenn. 2009) ("The Court finds that Plaintiffs' Title IX allegations must be dismissed because . . . the University's alleged failure to comply with Title IX regulations promulgated by the United States Department of Education, does not confer a private right of action."); *Moore v. Regents of the Univ. of Cal.*, No. 15-cv-05779-RS, 2016 WL 2961984, at *5 (N.D. Cal. May 23, 2016) ("There is no private right of action to recover damages under Title IX for violations of [the Department of Education's] administrative requirements, much less the provisions of the [2011 DCL] and [2014 Q&A], which are agency guidance documents.").  Mobus's misguided (and, indeed, misleading) attempt to repackage his complaints that the College did not comply with the 2011 DCL and 2014 Q&A as a contract claim does not allow him to circumvent this clear law.

2.   ***The 2011 Annual Security Report was Not an Enforceable Contract.***

a.   <u>Mobus Cannot Establish that he Relied Upon the 2011 Annual Security Report as a Representation of Simon's Rock's Duties in Conducting a Sexual Misconduct Investigation in 2014.</u>

Mobus is not entitled to summary judgment on his claim for breach of the 2011 Annual Security Report because he has offered *no evidence* supporting his proposition that Simon's Rock was contractually bound by statements in the 2011 Annual Security Report when it conducted its investigation of JG's allegations in the summer of 2014.  It is fundamental that the essential elements for the formation of a contract under Massachusetts law are offer, acceptance, and consideration.  *Doe v. Trustees of Boston College*, 892 F.3d 67, 88–89 (1st Cir. 2018).  Under certain circumstances, "the promise, offer, or commitment that forms the basis of a valid contract can be derived from statements in handbooks, policy manuals, brochures, catalogs, advertisements, and other promotional materials [issued by a college]."  *Guckenberger*, 974 F.

Supp. at 150.  But there are important restrictions on the power of published statements to bind colleges and universities.  A party may maintain an action for breach of a college of university's published statements only if the alleged promise is "definite and certain so that the promisor should reasonably foresee that it will induce reliance . . .  and reliance occurs."[12]  *Guckenberger*, 974 F. Supp. at 150 (internal quotation marks and citations omitted).

Nowhere in the voluminous evidence that Mobus has presented in support of his Motion for Partial Summary Judgment does he assert that he even saw or knew about the 2011 Annual Security Report, let alone that he relied on it as a representation of Simon's Rock's obligations in 2014.[13]  Because no such evidence exists, any attempt by Mobus to contend that the 2011 Annual Security Report constituted a contract with Simon's Rock during his matriculation more than two years later fails *ab initio*.  *See Guckenberger*, 974 F. Supp. at 150–51 (students could not maintain claim for alleged breach of statements in university brochure absent evidence that they received and relied upon brochure).

---

[12]     Ignoring this inquiry altogether, Mobus conclusorily asserts that "the terms [of a contract between a private school and a student] include official statements made by the school to its students . . . .  Accordingly, the Student Handbook . . . and the [2011 ASR] together set forth Defendant's contractual obligations to its students with respect to student sexual misconduct investigations."  Memorandum, p. 6.  By no stretch of the imagination do the cases Mobus cites support the sweeping (and incorrect) proposition that any official statement made by a school has the force of a contractual promise.  *See Mangla v. Brown University*, 135 F.3d 80, 83 (1st Cir. 1998) ("The terms of the contract may include statements provided in *student manuals and registration materials*." (emphasis added)); *Doe v. Brandeis University*, 177 F.Supp.3d 561, 593 (D. Mass. 2016) (alleged contractual terms derived solely from student handbook); *Bleiler v. College of Holy Cross*, 2013 WL 4714340, at *14-17 (D. Mass. 2013) (alleged contractual terms derived solely from student handbook).

[13]     On July 31, 2017, Defendant served a request for production of documents upon Plaintiff seeking "[a]ll documents, statements, assurances, and/or communications containing the 'terms of conditions' of your purported contract with Defendant as alleged in paragraph 94 of the Complaint."  On August 31, 2017, Plaintiff agreed to "produce the documents requested to the extent they are not privileged."  At no point during the discovery process, or even after, did Plaintiff ever produce the 2011 Annual Security Report to the Defendant as a document purporting to reflect the terms of any contract with the Defendant.  Rather, it was Defendant's counsel who produced the 2011 Annual Security Report to Plaintiff's counsel on October 31, 2018 in connection with the production of reports issued by Bard College at Simon's Rock under the Jeanne Clery Disclosure of Campus Security Policy and Campus Crime Statistics Act.  Clearly, the newfound contention that the 2011 Annual Security Report formed part of Mobus's contract with Simons' Rock reflects an off-the-mark argument recently conjured by Plaintiff's counsel; it is not the product of any contemporaneous and reasonable expectation by Mobus, who was told and understood that his disciplinary proceedings were governed by the 2013/2014 Student Handbook.  *See* Affidavit of Scott A. Roberts in Support of Defendant's Opposition to Plaintiff's Motion for Partial Summary Judgment, ¶ 31.

Moreover, any endeavor by Mobus to claim that he relied upon the 2011 Annual Safety

Report is futile because, in connection with the *two* sexual misconduct proceedings against him,

the College *twice* directed Mobus to the 2013/2014 Student Handbook as the source of the

applicable Sexual Misconduct Policy and investigation procedures, stating:

> The Sexual Misconduct Policy and investigation procedures are
> outlined in the 2013-2014 Student Handbook, Appendix C,
> available online at http://www.simons-rock.edu/campus-
> life/student-handbook.  I encourage you to review this information,
> and let me know if you have any questions about the process as it
> moves forward.

*See* Frey Aff., Exs. 14, 24.

Unsurprisingly, Mobus's prolix, 137-paragraph Complaint in this matter cites liberally to the

2013/2014 Student Handbook (*see* Complaint ¶1 and n. 1 (claiming that Defendant's conduct

constituted "a breach of the contract that existed between Plaintiff and Bard pursuant to Bard's

[2013/2014] Student Handbook), ¶28 and n. 12 (purporting to describe commitments under the

2013/2014 Student Handbook), ¶31(describing a "right" under the 2013/2014 Student

Handbook); ¶90 (describing eight "procedures" under the 2013/2014 Student Handbook); ¶¶94,

95, 96, and 97 (2013/2014 Student Handbook only document specifically identified as providing

a basis for Plaintiff's contract claim), but contains not a single reference to the 2011 Annual

Security Report.

In his baseless attempt to embrace belatedly language in the 2011 Annual Security

Report, Mobus conveniently neglects to mention the provision of that document that states,

"Simon's Rock['s] Sexual Assault Policy and Procedures which outlines disciplinary

proceedings, as well as special guidelines for cases involving sexual misconduct, are detailed in

the <u>Student Handbook</u>."  Frey Aff., Ex. 59 at BCSR0004815 (emphasis in original).  As Mobus

was told and plainly understood, "[t]he Sexual Misconduct Policy and investigation procedures .

. . outlined in the 2013-2014 Student Handbook," *see* Frey Aff., Exs. 14, 24, governed his

disciplinary proceedings, and Mobus has no basis to contend that he had any reasonable

expectation that a student handbook from a prior year would have applied to those proceedings.

b.      Mobus Cannot Assert a Private Right of Action Based on the 2011 Annual Security Report.

Any attempt by Mobus to claim that the 2011 Annual Security Report created separate

contractual obligations in connection with its 2014 investigation of JG's allegations is foreclosed

as a thinly-veiled and impermissible attempt to bring a private right of action under the Clery

Act.  The Clery Act "explicitly states that it does not create a private right of action or a standard

of care." *Z.J. v. Vanderbilt University*, 2018 WL 6694866, at *36 (M. D. Tenn. 2018).  *See also*

20 U.S.C. § 1092(f)(14)(A).  Relying on this language, courts have routinely barred litigants

from pursuing private suits based on compliance (or non-compliance) with the Clery Act.  *See,*

*e.g.*, *Souders v. Mount Joseph Univ.*, 2016 WL 8671966, at *7 (S. D. Ohio Mar. 11, 2016) ("The

statute explicitly states that there is no private right of action under 20 U.S.C. § 1092(f)."); *Doe*

*v. United States Dep't of Health & Human Servs.*, 85 F. Supp. 3d 1, 10 (D.D.C. 2015) ("The

Clery Act does prohibit private suits based on failure to comply with the Clery Act."); *Dziedzic*

*v. State Univ. of N.Y. at Oswego*, No. 5:10-cv-1018, 2014 WL 7331926, at *2 (N.D.N.Y. Dec.

19, 2014) ( "[T]he Clery Act specifically states that its provisions do not give rise to private

causes of action against educational institutions.").  By alleging that Simon's Rock "breached"

representations in the 2011 Annual Security Report, Mobus is effectively seeking to assert a

backdoor claim for violation of the Clery Act, in contravention of the Clery Act itself and myriad

court decisions.

For these reasons, the College's 2011 Annual Security Report did not create any

contractual obligation that could conceivably (much less reasonably) have governed the 2014

disciplinary proceedings against Mobus, nor could the terms of that document provide the foundation for a civil claim against the College as a matter of law.

## CONCLUSION

For the reasons set forth above, Defendant respectfully requests that this Court deny Defendant's Motion for Partial Summary Judgment.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1, Defendant states that it believes oral argument may assist the Court in understanding the facts and arguments set forth herein, and therefore requests the opportunity for oral argument.

BARD COLLEGE
By its attorneys,

/s/ Scott A. Roberts
Scott A. Roberts (BBO No. 550732)
    sroberts@hrwlawyers.com
Arielle B. Kristan (BBO No. 677048)
    akristan@hrwlawyers.com
HIRSCH ROBERTS WEINSTEIN LLP
24 Federal Street, 12th Floor
Boston, Massachusetts 02110
(617) 348-4300

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on April 1, 2019.

/s/ Scott A. Roberts
Scott A. Roberts