**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

---

ANDREW MOBUS,

     Plaintiff,

                                    C.A. No. 1:17-cv-11011-GAO

v.

BARD COLLEGE,

     Defendant.

---

**ANDREW MOBUS'S MEMORANDUM IN SUPPORT**
**OF HIS EMERGENCY MOTION TO ENFORCE DISCOVERY ORDERS**

Over the past month, the Court has issued two Orders compelling Defendant Bard College ("Bard") to fulfill its discovery obligations by producing documents to Plaintiff Andrew Mobus ("Mobus").  (ECF 124, issued on March 29, 2019; and ECF 139, issued on April 12, 2019 (together, the "Discovery Orders")). Bard's disregard of its discovery obligations now also includes disregard of this Court's Discovery Orders.

The Court's Discovery Orders require Bard to produce the LF Outcome Letter (ECF 139) and the Charging Letters and Outcome Letters in 17 other investigations (ECF 124).  Local Civil Rule 26.5(c)(2) requires the production of all drafts and nonidentical copies of any documents that are required to be produced, and Local Civil Rule 26.5 (a) specifically incorporates that requirement into all document requests.  Nonetheless, Bard insists that it will only produce the **final** versions of these documents.  Bard does not deny that drafts and nonidentical copies exist. Rather, it makes the curious argument that although Local Civil Rule 26.5(c)(2) applies to Document Requests, it somehow does not apply to Court Orders mandating **compliance with Document Requests**.

Bard's proffered justification for refusing to comply with another aspect of the Discovery

Orders is similarly disingenuous.  The Discovery Order issued on March 29, 2019 (ECF 124)

ordered Bard to produce, among other things, "communications:  (a) between the office the Title

IX Coordinator and the Sexual Misconduct Committee."[1]  Beginning with the academic year

2014-15, Bard eliminated the use of Sexual Misconduct Committees for the purpose of

conducting investigations and making recommendations and, instead, began to use Investigators

for that purpose.  In response to the Court's Order, Bard has taken the position that it is not

required to produce any communications involving Investigators, because that term was not used

in the document request or the motion.

One of the claims asserted by Mobus in this action is a violation of Title IX.  Defendant

Bard filed a motion for summary judgment on April 1, 2019 (ECF 127), seeking, *inter alia,*

dismissal of Mobus's Title IX claim on the ground that gender bias was not a motivating factor

in its mistreatment of Plaintiff Andrew Mobus.  Def.'s Mem. in Supp. of Mot. for Summ. J.,

Point D (ECF 128).  Because the documents at issue all relate to the issue of gender bias, Bard's

continuing willful refusal to produce these documents are urgently needed in order for Mobus to

respond to Bard's summary judgment motion by the currently scheduled deadline of May 24.

For that reason, Mobus respectfully requests, on an emergency basis that the Court issue an

Order enforcing its two previous Discovery Orders (ECF 124, 139) by requiring Bard to produce

the following:

1.      All drafts and nonidentical copies of the LF Outcome Letter;

2.      All drafts and nonidentical copies of the Charging Letters and Outcome Letters in
        the previously identified sexual misconduct investigations; and

---

[1] A description of the documents that form the subject matter of the Court's Order (ECF 124) appears in
Plaintiff's Motion to Compel Responses to Modified Document Requests (ECF 89).

36960118.4

3.      All communications between and among the Sexual Misconduct Committee or
the Investigators who replaced such Committees in academic year 2014-15, the
Title IX Coordinator, and the Dean of Students relating to the  previously
identified sexual misconduct investigations.

We respectfully submit that Bard's purported interpretation of this Court's Discovery

Orders are so clearly incorrect as to be tantamount to violations of those Orders, justifying the

imposition of sanctions. Pursuant to Federal Rule of Civil Procedure 37(b)(2)(A)(ii), Mobus

requests an Order directing, in the event Bard fails to fully comply with such Order, that the

issue of  Bard's gender bias be deemed established in favor of Mobus for the purposes of the

action and all other relief that the Court deems just.

Finally, pursuant to Federal Rule of Civil Procedure 37(b)(2)(C), Mobus requests an

award of attorneys' fees for the reasonable expenses incurred in bringing this motion.

## I.      <u>DRAFTS AND NONIDENTICAL COPIES OF THE LF OUTCOME LETTER.</u>

On April 12, 2019 the Court directed Bard to "produce the [LF Outcome] letter to the

plaintiff in a manner that is consistent with the parties' protective order."  (ECF 139).

On April 18, 2019, Bard produced, in .pdf format, a two-page, unsigned document that it

represented was the final version of the LF Outcome Letter.  Bard did not produce a signed copy

of that document, nor did it produce any drafts or nonidentical copies of it.  Mobus noted Bard's

failure to fully produce all versions, drafts or otherwise, of the LF Outcome Letter, attempting to

meet and confer on the issue.[2]  Bard refused, claiming that Local Civil Rule 26.5(c)(2) applies to

---

[2] Deposition testimony of Bard's witnesses and the multiple drafts and revisions of the outcome letter
produced in discovery confirm that Bard created and maintained multiple drafts and nonidentical
copies of the Outcome Letter in the JG matter that forms the subject matter of this action (Coppola Aff.
¶ 5), and there is no reason to believe that Bard departed from that practice in arriving at the final LF
Outcome Letter or the Outcome Letters in any of the other proceedings as to which the Court has ordered
further document production.  Moreover, Bard has not denied the existence of such drafts and
nonidentical copies; it simply refuses to produce them.  Coppola Aff. ¶ 2.

Document Requests, but that it somehow does not apply to Court Orders mandating **compliance with Document Requests**.  Affidavit of Lauren J. Coppola ("Coppola Aff.") ¶ 2.  We ask the Court to reject this sophistry.

## II.     DRAFTS AND NONIDENTICAL COPIES OF CHARGING LETTERS AND OUTCOME LETTERS IN THE OTHER MATTERS.

The Court's March 29, 2019 Discovery Order (ECF 124) required Bard to produce Charging Letters and Outcome Letters in other sexual misconduct investigations that were previously identified.  (*See* note 1, above).  Bard refuses to search for and produce drafts and nonidentical copies of these documents,[3] also based on the specious argument that, although Local Civil Rule 26.5(c)(2) applies to Discovery Requests, it does not apply to Court Orders mandating compliance with Discovery Requests.  Coppola Aff. ¶ 3.  Again, this argument should be rejected.

## III.    COMMUNICATIONS TO AND FROM SINGLE INVESTIGATORS.

Also encompassed within the Court's March 29, 2019 Discovery Order (ECF 124) was an obligation to produce "communications between and among the Sexual Misconduct Committee, the Title IX Coordinator and the Dean of Students relating to"  each of several previously identified investigations.  ECF 124 (allowing ECF 89); ECF 90 at 2.  Beginning with the academic year 2014-15, Bard eliminated the use of Sexual Misconduct Committees for the purpose of conducting investigations and making recommendations and, instead, began to use Investigators for that purpose.  In response to the Court's Order, Bard has taken the position that

---

[3] Bard has stated it will not withhold drafts and nonidentical copies of outcome letters that are attached to the communications that the Court compelled Bard to produce.  Coppola Aff. ¶ 3.  This is insufficient. First, Bard has an independent duty to search for, harvest, and produce all drafts and nonidentical copies, and these documents may not all be attached to communications.  Second, as explained in Part III of this memorandum, Bard refuses to produce communications among Investigators, which are over 80% of the communications – and presumably 80% of the drafts and nonidentical copies – at issue.

it is not required to produce any communications involving Investigators, because investigations

that used Investigators are different from investigations using Sexual Misconduct Committees.

Coppola Aff. ¶ 4.  This is the same argument that Bard made in opposing Mobus's motion, and,

therefore, the same argument that the Court has already rejected.

In its opposition to Mobus's motion that led to issuance of this Discovery Order, Bard

argued that these documents relating to other investigations were irrelevant to Mobus's theory of

gender bias in part because "[f]undamental differences between the JG/Mobus Investigation and

the seventeen investigations at issue . . . undercut any conceivable relevancy."  Def.'s Opp. to

Pl.'s Second Mot. to Compel 9 (ECF 94).  Bard submitted the following explanation of the

change in the investigatory procedure:

> Beginning in the fall of 2014, Simon's Rock transitioned from
> having a three-person committee of trained faculty and staff conduct
> its sexual misconduct investigations to having an outside
> investigator conduct them.  Of the seventeen sexual misconduct
> proceedings at issue, an outside investigator served as the factfinder
> in fourteen of them.

*Id.*  The Court has already rejected Bards attempt to differentiate between investigations handled

by Investigators and those handled by Sexual Misconduct Committees.  It should do so again.

Recent correspondence among the parties' counsel concerning this issue shows Bard

perceives this as a "gotcha" moment.  In defending its position, Bard argued that Mobus knew

about the change to the single investigator model and should have been more careful with its

diction.  In its own Opposition to Mobus's Second Motion to Compel, however, Bard adopted

the same view that references to Sexual Misconduct Committees include both multi-person

committees and single investigators—hence the undue burden argument.  Bard is not taking an

inconsistent position because of any new facts.  Instead, it is intentionally pursuing a directly

inconsistent position than it did opposing Mobus's Second Motion to Compel in order to avoid

its discovery obligations, which is prohibited by the doctrine of judicial estoppel.  *See FleetBos.*

*Fin. Corp. v. Alt*, 668 F. Supp. 2d 277, 280 (D. Mass. 2009).

Bard's first document production since the Court's Order shows that the natural reading

of the document request includes both multi-person committees and single investigators.  Bard

moved to compel production of three categories of documents, Charging Letters, Outcome

Letters, and communications.  Regarding Outcome Letters, Mobus's specific request was for

"the outcome letters announcing the results of the investigation and the sanctions that were

recommended by the *Sexual Misconduct Committee* and approved by the Dean of Students."

ECF 90 at 2 (emphasis added).  Following the Court's Order, on April 9, 2019, Bard produced

Outcome Letters for 15 different cases, 13 of which were the results of investigations conducted

by a single investigator.  Coppola Aff. ¶ 6.  The defined term "Outcome Letter" relates to the

sanctions recommended by the Sexual Misconduct Committee, and yet Bard produced letters

relating to sanctions recommended by single investigators.  Bard, therefore, has waived any

argument that it is not compelled to produce documents concerning single investigators.  *Cf. In*

*re Lernout & Hauspie Sec. Litig.*, 222 F.R.D. 29, 35 (D. Mass. 2004) (finding subject matter

waiver and requiring production of 15 documents on the same subject as a produced privileged

document).

Finally, the Court's Order deemed that the twice narrowed document requests would not

place an undue burden on Bard.  In doing so, the Court considered, directly addressed, and flatly

rejected Bard's assertion it would be an undue burden for it to review the documents it now

seeks to withhold.  By referencing the burden on Bard, the Court implicitly acknowledged that

the scope of the request included communications with single investigators for the 14

investigations from the 2014-15 academic year and beyond.  A more restrictive interpretation of

the Court's Order offends the liberal discovery permitted by the Federal Rules of Civil Procedure. *See Baker v. Liggett Grp., Inc.*, 132 F.R.D. 123, 125 (D. Mass. 1990) ("Fed. R. Civ. P. 26(b)(1)(i) generally permits liberal discovery of relevant information.").

For all these reasons, the Court should reaffirm that its March 28, 2019 Order requires Bard to produce communications to and from single investigators of sexual misconduct investigations.

## IV.     REQUEST FOR FED. R. CIV. P. 37(B)(2)(A) SANCTIONS.

"Rule 37 allows a court to issue "further just orders" in response to a failure to obey a discovery order, including directing certain facts to be taken as established, striking pleadings, dismissing proceedings, and finding a party in contempt of court." *United States v. Pfizer, Inc.*, 188 F. Supp. 3d 122, 137-38 (D. Mass. 2016) (quoting Fed. R. Civ. P. 37(b)(2)(A)).  When considering available sanctions, relevant factors include "the severity of the violation, the legitimacy of the party's excuse, repetition of violations, the deliberateness *vel non* of the misconduct, mitigating excuses, prejudice to the other side and to the operations of the court, . . . the adequacy of lesser sanctions," and prior warnings from the court. *Robson v. Hallenbeck*, 81 F.3d 1, 2-3 (1st Cir. 1996).

Bard's bad-faith interpretation of the Courts Discovery Orders may already warrant relief under Fed. R. Civ. P. 37(b)(2)(A).  If the Court grants the instant motion enforcing its previous orders, and if Bard again fails to make full discovery, we respectfully submit that Mobus would *at least* be entitled to an Order directing that Bard's gender bias be taken as established for the purposes of the action. *E.g.*, *Curley v. Radow*, Civil Action No. 00-10956-GAO, 2007 U.S. Dist. LEXIS 50969, at *4-5 (D. Mass. July 16, 2007) (sanctioning defendants by denying their motion for summary judgment and barring defendants from presenting evidence not previously disclosed in discovery for failure to comply with Court's prior order).

## V.      **REQUEST FOR ATTORNEYS' FEES.**

Pursuant to Federal Rule of Civil Procedure 37(a)(5), Mobus requests that the Court enter an award of attorneys' fees in an amount to be set by the Court after further submission by Mobus, to reimburse Mobus for the reasonable expenses incurred in making this motion, including attorneys' fees.

Here, Mobus has already prevailed on *two* motions to compel production of documents. The federal rules provide that a court "must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."  Fed. R. Civ. P. 37(a)(5).  The only exceptions to the award of expenses are when "(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust."  None of these factors is present here, and Mobus is entitled to its reasonable expenses for bringing this Emergency Motion for Clarification of Discovery Orders.

## VI.     **CONCLUSION**

For the foregoing reasons, Plaintiff Andrew Mobus respectfully requests that the Court compel Bard to provide, by May 3, 2019:

1.      all drafts and nonidentical copies of the LF Outcome Letter;

2.      all drafts and nonidentical copies of the charging letters and outcome letters of the previously identified sexual misconduct investigations; and

3.      all communications to and from single investigators of the previously identified sexual misconduct investigations; and

36960118.4

Mobus also respectfully requests that the Court's Order provide that, upon a failure by Bard  to fully comply with such Order, the issue of Bard's gender bias will be deemed established in favor of Mobus for the purposes of the action.

Finally, pursuant to Federal Rule of Civil Procedure 37(b)(2)(C), Mobus respectfully requests that Bard be required to reimburse Mobus for the expenses and reasonable attorneys' fees incurred on this motion, in an amount to be set by the Court after further submission by Mobus.

## VII.   CERTIFICATION PURSUANT TO LOCAL RULE 37.1.

The undersigned certifies that the provisions of Local Rule 37.1 have been complied with. In addition to the correspondences exchanged, as discussed *supra*, on April 29, 2019 at 3:00 p.m., via telephone and lasting approximately 15 minutes, Mobus's attorney (Lauren Coppola) conferred with Bard's attorney (Arielle Kristan) pursuant to Local Rule 37.1(a).  The parties were unable to reach any further compromise with regard to Mobus's Emergency Motion to Enforce Discovery Orders and Bard refused to produce any additional documents responsive to these requests.  Coppola Aff. ¶ 7.

Dated: April 30, 2019

ANDREW MOBUS,

By His Attorneys,

ROBINS KAPLAN LLP

/s/ Lauren J. Coppola
Lauren J. Coppola (BBO #666211)
Timothy Wenger (BBO #674087)
800 Boylston Street, Suite 2500
Boston, MA  02199
617 267-2300
lcoppola@robinskaplan.com
twenger@robinskaplan.com

Martin P. Desmery (BBO #550133)
Desmery Law
988 Blvd of the Arts, #1417
Sarasota, FL 34236
Boston, MA 02110
781 799-9354
mdesmery@desmerylaw.com

Robert D. Piliero
Lisa A. Frey
Piliero & Associates PLLC
444 Madison Avenue, Fourth Floor
New York, NY 10022
646 854-1273
piliero@pilierolaw.com
frey@pilierolaw.com

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on April 30, 2019.


/s/ Lauren J. Coppola
Lauren J. Coppola

36960118.4