UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| | ) | |
| ANDREW MOBUS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 17-11011-GAO |
| | ) | |
| BARD COLLEGE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE TO PRECLUDE EVIDENCE AND ARGUMENT REGARDING GENDER BIAS**

Plaintiff Andrew Mobus ("Plaintiff," "Andrew," or "Mobus") submits this opposition to Defendant's Third Motion in Limine to preclude certain categories of gender bias evidence (Doc. 242).

As already demonstrated at summary judgment and will be shown again at trial, Plaintiff has substantial admissible evidence "'cast[ing] some articulable doubt on the accuracy of the outcome of the disciplinary proceeding,' and indicating that 'gender bias was a motivating factor.'" *Doe v. Trustees of Bos. Coll.*, 892 F.3d 67, 90 (1st Cir. 2018) (quoting *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994)). This evidence may include "statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender." *Yusuf*, 35 F.3d at 715. Bard's mischaracterization and mislabeling of Plaintiff's evidence aside, the gender bias evidence Plaintiff intends to present at trial falls well within the long-accepted categories of evidence endorsed by *Yusuf* and its progeny.

**A. Plaintiff's Evidence Shows Bard Favored the Female Accuser over the Male Accused in the J.G. Proceeding.**

Bard first asks the Court to preclude evidence and argument regarding bias against respondents or in favor of complainants in sexual misconduct proceedings, including evidence of any favorable treatment of alleged victims of sexual misconduct. Doc. 242 at 3-4. This argument does not match Plaintiff's evidence. Although the effects of gender bias need not be limited to the J.G. proceeding, Mobus can satisfy his evidentiary burden through evidence "supporting an inference of sex bias in his particular proceeding." *Doe v. Oberlin Coll.*, 963 F.3d 580, 586 (6th Cir. 2020) (citing *Doe v. Miami Univ.*, 882 F.3d 579, 593 (6th Cir. 2018)).

Accordingly, Plaintiff will present evidence that Bard's disciplinary procedures, as applied to Mobus and J.G. in their proceeding, support an inference of gender bias in favor of the female complainant, J.G. And there is substantial evidence that a pattern of decision-making with respect to Bard's disciplinary procedures favored J.G., the female complainant, over Mobus, the male accused.

Similarly, Bard school officials assisted JG with her written materials submitted to the school.

*See Rolph v. Hobart & William Smith Colleges*, 271 F. Supp. 3d 386, 402 (W.D.N.Y. 2017) (school help in assisting

female and not male is sign of gender bias). ████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████ *See Case W. Reserve*, 2017 U.S. Dist. LEXIS 142002, at 18-19; *Neal*, 2017

U.S. Dist. LEXIS 22196, at \*25-33 (failure to consider female motivation is gender bias).  This

and other evidence will show that, notwithstanding Bard's obligation under Title IX to conduct its

disciplinary proceedings equitably, officials at Bard upheld and even enhanced the rights of the

female accuser, while the rights of the male accused were repeatedly violated.  *See Columbia*, 831

F.3d at 56-57 (evidence that school did not abide by rules to protect accuser shows signs of gender

bias).

Bard's argument and authorities are, therefore, inapplicable.  Plaintiff does not argue that

Bard's procedures facially favor complainants or disfavor respondents, or that Bard generally

favors complainants in any disciplinary proceeding because of textual references in the Student

Handbook or the number of male respondents convicted in other disciplinary proceedings. *See Doe v. Trustees of Bos. Coll.*, 2016 WL 5799297, at \*25 (D. Mass. Oct. 4, 2016), *aff'd in part, vacated in part, remanded*, 892 F.3d 67 (1st Cir. 2018) (granting summary judgment for BC on Title IX claim and rejecting claims of bias premised on use of terms "victims" and "alleged perpetrator"). Rather, Plaintiff is relying on evidence of gender bias in the way Bard officials inequitably applied the disciplinary procedures in the J.G. proceeding to favor the female complainant. This evidence is easily admissible as evidence of gender bias.

**B. Mobus Relies on Evidence that Outside Pressure Influenced Senior Officials Involved in his Proceeding.**

Bard's second argument is that Plaintiff intends to admit guidance and a list of schools under investigation from the U.S. Department of Education as substantive and generalized evidence of gender bias. But this not a case of generalized or abstract evidence of pressure. Rather, Plaintiff will rely on evidence that outside pressure imposed on Bard influenced the senior university officials involved in Mobus's disciplinary proceeding and punishment.

It is by now widely accepted that pressure on a particular school is a factor that can result in gender bias, especially when coupled with procedural irregularities in a particular case. *See Schwake v. Arizona Bd. of Regents*, 967 F.3d 940, 948 (9th Cir. 2020) ("[I]t is reasonable to infer that such a federal investigation placed tangible pressure on the University. It is also entirely plausible that such pressure would affect how the University treated respondents in sexual misconduct disciplinary proceedings on the basis of sex."); *Doe v. Oberlin Coll.*, 963 F.3d 580, 587 (6th Cir. 2020) ("pressure from the government to combat vigorously sexual assault on college campuses and the severe potential punishment . . . can . . . yield a reasonable inference of sex discrimination); *Doe v. Univ. of Arkansas - Fayetteville*, 974 F.3d 858, 865 (8th Cir. 2020) (holding plaintiff stated a claim where he alleged, in addition to procedural irregularities, that "[u]niversity

was under pressure on multiple fronts to find males responsible for sexual assault"); *Doe v. Purdue Univ.*, 928 F.3d 652, 670 (7th Cir. 2019) (Barret, J.) (holding pressure on university was far from abstract and may have been particularly acute for Title IX coordinator); *Menaker v. Hofstra Univ.*, 935 F.3d 20, 33 (2d Cir. 2019) ("[W]hen combined with clear procedural irregularities in a university's response to allegations of sexual misconduct, even *minimal* evidence of pressure on the university to act based on invidious stereotypes will permit a plausible inference of sex discrimination); *Doe v. Baum*, 903 F.3d 575, 586 (6th Cir. 2018) (external pressure "provides a backdrop" that, together with circumstantial evidence of bias in a plaintiff's specific proceeding, gives rise to an inference of gender bias); *Doe v. Miami Univ.*, 882 F.3d 579, 593 (6th Cir. 2018) (evidence of gender-based decision making coupled with external pressure gave rise to a plausible inference of bias); *Doe v. Columbia Univ.*, 831 F.3d 46, 57-58 & n.11 (2d Cir. 2016) ("There is nothing implausible or unreasonable about the Complaint's suggested inference that the panel adopted a biased stance in favor of the accusing female and against the defending male varsity athlete in order to avoid further fanning the criticisms that Columbia turned a blind eye to such assaults.").

These authorities support the admission of evidence showing the school and its officials were under outside pressure. For this is not a case of abstract or generalized pressure. Deputy Title IX Coordinator Lyon acknowledged schools were under pressure from the federal government in 2014, when the J.G. proceeding occurred. She also thought that pressure from the federal government and a relatively high number of incidents at Bard campuses were important matters. Lyon was aware of a list of higher education institution with open Title IX investigations, and she understood that the school could lose funding. She was concerned that Bard's sister campus had a high number of incidents. Ex. 10, Lyon Dep. 168:15-172:13, 172:23-174:8. While

federal pressure on a university is not enough by itself, it is a factor to consider among others suggesting gender bias.  *See, e.g.*, *Miami*, 882 F.3d at 593-94; *Purdue*, 923 F.3d at 668-69.  A critical factor in this case is that Lyon turned the pressure she felt to steer the J.G. proceedings against Mobus from the outset.  █████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████.  *See Doe v. Amherst*, 238 F. Supp. 3d 195, 222-23 (D. Mass. 2017) (manipulation of proceedings to effectuate outcome is sign of gender bias).  Thus, Plaintiff's evidence that Bard faced specific pressure in 2014, together with evidence that Lyon was aware of that pressure and believed it was important, and Lyon's subsequent and significant role in tilting the scales against Mobus in the J.G. proceedings, should be admitted as evidence of gender bias.

**C. Professor Francisca Oyogoa's Role in Proceedings Involving Mobus is Highly Relevant.**

To be clear, Mobus will not argue that any witness's self-identification as a feminist or interest in or involvement with women's studies or causes is cognizable evidence of gender bias.  Doc. 242 at 6-7.  The bias evidence relating to Professor Oyogoa is far more straightforward.  ██

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████.  The jury can, of course, infer gender bias from Oyogoa's refusal to advocate on behalf of a male student because she could not be neutral, yet she felt comfortable sitting in judgment of the same male student only a few months later.

**D. The Survey Evidence is Not "Comparator Evidence"**

Bard argues that its officials' inaction when Mobus was the victim of sexual harassment should be excluded as improper comparator evidence. Doc. 242 at 7-10. First, this is not a Title VII disparate treatment case involving a similarly-situated person analysis. *See id.* at 8 (citing *Ray v. Ropes & Gray LLP*, 799 F.3d 99, 114-15 (1st Cir. 2015) (plaintiff offered comparator evidence of associates promoted to partner or counsel; court found distinguishing or mitigating circumstances to justify the disparate treatment). Nor is this a Title IX selective enforcement case, where a plaintiff must "show that a similarly-situated member of the opposite sex was treated more favorably than the plaintiff due to his or her gender." *Z.J. v. Vanderbilt Univ.*, 355 F. Supp. 3d 646, 677 (M.D. Tenn. 2018) (collecting cases); *Doe v. Cummins*, 662 F. App'x 437, 452 n.10 (6th Cir. 2016) (holding claim was "most appropriately analyzed under the 'erroneous outcome' standard," rather than selective enforcement, because the plaintiff did not allege a similarly-situated female student was treated differently under the disciplinary procedures). Indeed, the two cases Bard cites for its similarly-situated, i.e." comparator evidence," argument each discuss gender bias in the context of a selective enforcement claim.

In *Haidak v. Univ. of Massachusetts-Amherst*, 933 F.3d 56, 74 (1st Cir. 2019), a selective enforcement case, the plaintiff argued the proceedings against him were affected by his male gender because the university filed charges against him when a female accused him of misconduct, yet did not file charges against her when he accused her of misconduct. The court found the two "were not similarly situated as complainant" because the female complainant and her mother contacted the university to initiate charges, while the plaintiff's accusations came second and arose only defensively. *Id.* At most, the plaintiff showed that the school pursued her claim because she made the allegation first, not because the plaintiff's gender influenced the school. *Id.* The *Haidak* court was not addressing "comparator evidence" more generally as Bard contends, nor was it

holding that any reference to action or inaction by officials in other close-in-time disciplinary proceedings are irrelevant or unfairly prejudicial when deciding an erroneous outcome claim under Title IX.

In the other case Bard cites, *Doe v. Univ. of Dayton*, 2018 WL 1393894, at \*10 (S.D. Ohio 2018), the plaintiff alleged that similarly-situated females were treated more favorably than him, but he did not identify any such females in his pleading.  The court explained that, to "prevail on a selective enforcement claim, the plaintiff must show that a similarly-situated member of the opposite sex was treated more favorably than the plaintiff due to his or her gender." *Id.* (citations omitted).  The court concluded that the plaintiff's failure to identify a specific example of a female treated more favorably than him required dismissal. *Id.*

In the end, Bard's similarly-situated argument confuses the law and the evidence.  There is no requirement that Mobus produce comparator evidence for his erroneous outcome claim.  Nor does the Fed. R. Evid. 403 balancing analysis require a similarly-situated analysis as a threshold to admissibility.  The only question is whether the evidence is probative of gender bias and not overly confusing or unduly prejudicial.  Mobus's evidence relating to the survey meets these requirements.

Dean Graves, in explaining why the school did not take action when Andrew was the subject of sexual harassment ███████████████████████████████████████████ ████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████     Similar statements by school officials have been deemed particularly probative evidence of gender bias.  *Yusuf,* 35 F.3d at 715; *Doe v. Marymount Univ.*, 297 F. Supp. 3d 573, 585–86 (E.D. Va. 2018) (deeming "noteworthy" and evidence of decision making "infected with

impermissible gender bias" where professor investigating separate incident involving male complainant asked questions believing male students were aroused by non-consensual sexual contact).

The evidence ████████████████████████████████████ subjecting him to harassment, and Bard officials' inaction and sexist remarks in connection with the survey, is admissible because it is particularly probative evidence of gender bias infecting the decision-making process at Simon's Rock.  In the end, none of the authorities Bard relies on mandates the exclusion of probative gender bias evidence under Rule 403 because it does not fit the strictures of Title VII comparator evidence or the similarly-situated analysis applied in Title IX selective enforcement cases.

## CONCLUSION

For the reasons set forth above, each category of gender bias evidence Bard seeks to exclude should be admitted as probative of gender bias in the J.G. disciplinary proceeding and not unfairly prejudicial or confusing.

Respectfully submitted,

Andrew Mobus

By His Attorneys,

DLA PIPER LLP (US)


/s/ Matthew J. Iverson_____

Matthew J. Iverson (BBO # 653880)
33 Arch Street, 26th Floor
Boston, MA 02110
(617) 406-6000
(617) 406-6100 (fax)
matthew.iverson@dlapiper.com


/s/ Charles B. Wayne_____

Charles B. Wayne (*pro hac vice*)
Brian J. Young (*pro hac vice*)
500 8th Street, N.W.
Washington, D.C. 20004
(202) 799-4000
(202) 799-5000 (fax)
charles.wayne@dlapiper.com
brian.young@dlapiper.com


/s/ Lisa A. Frey_____

Lisa A. Frey (*pro hac vice*)
50 Old Main Road, #1857
Quogue, NY  11959
(917) 565-1066
lisaxfrey@gmail.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of February, 2021, a copy of the foregoing was served by electronic mail using the CM/ECF system, which will then send notification of such filing to all counsel of record.

/s/Charles B. Wayne
Charles B. Wayne