UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANDREW MOBUS,<br><br>    Plaintiff and Defendant-in-Counterclaim,<br><br>    v.<br><br>BARD COLLEGE,<br><br>    Defendant and Plaintiff-in-Counterclaim. | C.A. No. 1:17-cv-11011-GAO |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE TO PRECLUDE A RETRIAL OF THE UNDERLYING PROCEEDINGS**

Though framed as a "Motion to Preclude Retrial of the Underlying Proceedings" (the "Motion"), the clear intent of Plaintiff Andrew Mobus's ("Mobus") Motion is to exclude relevant evidence concerning the accuracy and validity of the outcome reached by the committee that found Mobus responsible for violating the Sexual Misconduct Policy (the "Committee"). Mobus's proposition is untenable because his Title IX claim is premised on the "erroneous outcome" theory of liability. As numerous federal courts have recognized, a party seeking to advance an erroneous outcome claim theory must prove that he was, in fact, *innocent* of that which he was accused, i.e., an erroneous outcome in a disciplinary proceeding, and that gender bias was a motivating factor in the erroneous outcome. Having asserted this claim, Mobus cannot now preclude from trial evidence concerning the truth of the underlying allegations made against him. This Court should deny Plaintiff's Motion.

**ARGUMENT**

I. **Proof of Mobus's Innocence is a Necessary Element of His Title IX Erroneous Outcome Claim.**

Mobus's Motion is premised on an incorrect characterization of the standard to be applied to Title IX erroneous outcome claims. Mobus asks this Court to adopt a standard for erroneous outcome claims void of any consideration of whether there was, in fact, an *error* in the outcome reached by the Committee. *See* Memorandum in Support of Plaintiff's Motion in Limine to Preclude a Retrial of the Underlying Proceedings (ECF No. 245-1), pp. 2–4. Mobus would instead limit the jury's review of the evidence to whether the Committee engaged in a "flawed" procedure resulting in an outcome motivated in part by gender bias. *Id.* Not only does this position defy logic (how can a plaintiff establish an erroneous outcome without a demonstrable error?), but it also ignores the standard established by the seminal case addressing theories of liability under Title IX, *Yusuf v. Vassar College*, 35 F.3d 709 (2d Cir. 1994), which requires plaintiffs to prove they are *innocent* of the alleged misconduct to succeed on a Title IX erroneous outcome claim. *Id.* at 715. In reviewing different theories of liability under Title IX, the Second Circuit in *Yusuf* noted the dichotomy between an erroneous outcome theory and a "selective enforcement" theory, in which proof of innocence is not material:

> Plaintiffs attacking a university disciplinary proceeding on grounds of gender bias can be expected to fall generally within two categories. *In the first category, the claim is that the plaintiff was innocent and wrongly found to have committed an offense.* In the second category, the plaintiff alleges selective enforcement. Such a claim asserts that, regardless of the student's guilt or innocence, the severity of the penalty and/or the decision to initiate the proceeding was affected by the student's gender.

35 F.3d at 715 (emphasis added); *see also Doe 2 by & through Doe 1 v. Fairfax Cnty. Sch. Bd.*, 832 Fed. App'x 802, 804–805 (4th Cir. 2020) (contrasting an erroneous outcome claim with a selective enforcement claim). Thus, while proof of innocence may not be relevant to a selective enforcement theory, <u>*it is a necessary element of an erroneous outcome theory of liability*</u>.

Because Mobus asserts an "erroneous outcome" theory (*see* ECF No. 1, First Claim, "Violation of Title IX – Erroneous Outcome"), he must establish that he was innocent of the charges for which he was found responsible.

On each occasion it has had the opportunity to address a Title IX erroneous outcome claim, the First Circuit has applied *Yusuf*. *See Haidak v. Univ. of Massachusetts-Amherst*, 933 F.3d 56, 73–74 n.11 (1st Cir. 2019) ("Both parties agree on the theories of liability outlined in *Yusuf*. We have, in the past, applied the *Yusuf* framework to Title IX challenges based on disciplinary proceedings"); *Doe v. Trustees of Boston Coll.*, 892 F.3d 67, 90 (1st Cir. 2018) (applying *Yusuf* standard to Title IX erroneous outcome claim on summary judgment). Further, this Court has regularly relied on *Yusuf* in analyzing Title IX erroneous outcome claims. *See Doe v. Harvard Univ.*, 462 F. Supp. 3d 51, 60 (D. Mass. 2020) (applying *Yusuf* to motion to dismiss); *Harnois v. Univ. of Massachusetts at Dartmouth*, No. 19-10705-RGS, 2019 WL 5551743, at *5–6 (D. Mass. Oct. 28, 2019) (citing *Yusuf* for pleading standard for Title IX erroneous outcome claim at motion to dismiss stage); *Leader v. President & Fellows of Harvard Coll.*, No. 16-10254, 2018 WL 3213490, at *5 (D. Mass. Jun. 29, 2018) (citing *Yusuf* at summary judgment); *Haidak v. Univ. of Massachusetts at Amherst*, 299 F. Supp. 3d 242, 269 (D. Mass. 2018), *aff'd in part and rev's in part on other grounds*, 933 F.3d 56 (1st Cir. 2019) (applying *Yusuf* to erroneous outcome claim on summary judgment and finding plaintiff failed to establish the first element of his claim because he admitted to engaging in the underlying misconduct); *Doe v. Amherst Coll.*, 238 F. Supp. 3d 195, 222–23 (D. Mass. 2017) (applying *Yusuf* to Title IX erroneous outcome claim at motion to dismiss stage); *Doe v. W. New England Univ.*, 228 F. Supp. 3d 154, 186–87 (D. Mass. 2017) (applying *Yusuf* framework at motion to dismiss stage; quoting *Yusuf* for proposition that "In . . . 'erroneous outcome' cases, 'the claim is that the

plaintiff was innocent and wrongly found to have committed an offense.'"); *Doe v. Univ. of Massachusetts-Amherst*, No. 14-20143-MGM, 2015 WL 4306521, at *8 (D. Mass. Jul. 14, 2015) (adopting *Yusuf* in analyzing plaintiff's Title IX claims on motion to dismiss); *Bleiler v. Coll. of Holy Cross*, No. 11-11541-DJC, 2013 WL 4714340, at *5–6 (D. Mass. Aug. 26, 2013) (analyzing plaintiff's Title IX claims under *Yusuf* framework at summary judgment).

The First Circuit and this Court are not alone in adopting the *Yusuf* standard, as federal courts throughout the country routinely rely on *Yusuf* in indicating that, in order to succeed on a Title IX erroneous outcome claim, a plaintiff must first prove that the plaintiff is *innocent* of the underlying misconduct. *See Fairfax Cnty. Sch. Bd.*, 832 Fed. App'x at 805 ("we agree with the Board that Doe's admissions belie any assertion of innocence and, thus, defeat his erroneous outcome claim."); *Doe v. Valencia Coll.*, 903 F.3d 1220, 1236 (11th Cir. 2018) ("Under [the erroneous outcome] test, a student must show both that he was 'innocent and wrongly found to have committed an offense' and that there is 'a causal connection between the flawed outcome and gender bias.'"); *Plummer v. Univ. of Houston*, 860 F.3d 767, 777 (5th Cir. 2017) (recognizing that under an erroneous outcome theory, "the claim is that the charged student (plaintiff) was innocent and wrongly found to have committed an offense."); *Doe v. Cummins*, 662 Fed. App'x 437, 452 (6th Cir. 2016) ("A successful 'erroneous outcome' claim requires the plaintiff to show that the 'outcome of [the] University's disciplinary proceeding was erroneous because of sex bias.'"); *Robinson v. Howard Univ., Inc.¸* 335 F. Supp. 3d 13, 27 (D.D.C. 2018) ("To succeed under [an erroneous outcome] theory, Mr. Robinson must show that 'he was innocent and wrongfully found responsible of an offense due to gender bias.'"); *Doe v. George Washington Univ.*, 305 F. Supp .3d 126, 133 (D.D.C. 2018) ("Courts in other circuits have recognized an 'erroneous outcome' theory of Title IX liability, under which a student may

prevail upon a showing that he was innocent and wrongfully found responsible of an offense due to gender bias."); *Schaumleffel v. Muskingum Univ.*, No. 2:17-cv-463, 2018 WL 1173043, at *15 (S.D. Ohio Mar. 6, 2018) ("An erroneous outcome claim exists when an 'innocent' person was wrongly found to have committed an offense because of his or her gender."); *Doe v. Ohio State Univ.*, 239 F. Supp. 3d 1048, 1069–70 (S.D. Ohio 2017) ("An erroneous outcome claim exists when an 'innocent' person was wrongly found to have committed an offense because of his or her gender."); *Faprusi v. Case W. Reserve Univ.*, No. 1:16 CV 1586, 2016 WL 8794464, at *4 (N.D. Ohio Nov. 30, 2016) ("the erroneous outcome standard requires that a plaintiff demonstrate that he is innocent of the charges against him and was wrongly found to have committed the offense in the disciplinary proceeding."); *Marshall v. Ohio Univ.*, No. 2:15-cv-775, 2015 WL 7254213, at *5 (S.D. Ohio Nov. 17, 2015) ("The gravamen of an erroneous outcome claim is that an 'innocent' person was wrongly found to have committed an offense because of his or her gender.").

Indeed, this Court previously acknowledged that an erroneous outcome claim cannot survive without a showing of innocence when it found that a student could not maintain an erroneous outcome claim because he "admit[ed] he violated the [no-contact] order" at issue in the underlying disciplinary proceedings. *Haidak*, 299 F. Supp. 3d at 269. In *Haidak*, a case cited by Mobus in support of the Motion, the Court addressed plaintiff's claims on summary judgment, noting that at that procedural stage plaintiff "must first offer evidence sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding" in order to satisfy the first element of his claim at summary judgment. *Id.* (internal quotations omitted). However, in concluding that plaintiff failed to satisfy this first element, the Court did not focus on evidence of procedural flaws, but rather found that *because the student admitted to the*

*underlying misconduct*, he could not establish his innocence or that the outcome reached by the educational institution was erroneous:

> The record in this case is insufficient to support Plaintiff's case on either element. First, the evidence of an error by the Hearing Board is unpersuasive. The two findings that Plaintiff violated the no-contact orders are essentially undisputed. Plaintiff admits he violated the order egregiously but offers the patently inadequate justification that Gibney 'consented' to the violations. He does not contest the finding that he was predominantly responsible for the April 2013 incident of assault, arguing that he was acting in self defense. But the Hearing Board's contrary conclusion was supported by substantial evidence and involved a credibility determination it was in the best position to make.

*Id.* Thus, the Court recognized in *Haidak* that a plaintiff cannot succeed on a Title IX erroneous outcome claim without first establishing that the plaintiff is innocent of the underlying conduct.

Consistent with this fundamental principle—that an erroneous outcome claim cannot proceed without evidence that the plaintiff was innocent and thus disciplined in error—courts in other circuits have rejected erroneous outcome claims where plaintiffs are unable to establish that they are innocent of the underlying sexual misconduct. *See Fairfax Cnty. Sch. Bd.*, 832 Fed. App'x at 805 ("we agree with the Board that Doe's admissions belie any assertion of innocence and, thus, defeat his erroneous outcome claim."); *Doe v. Case W. Reserve Univ.*, 809 Fed. App'x 276, 280 (6th Cir. 2020) (plaintiff could not sustain erroneous outcome claim where he acknowledged committing the underlying conduct, with the court finding "John's concession is enough to dispel the notion that his hearing resulted in an 'erroneous outcome.'"); *Valencia Coll.*, 903 F.3d at 1236 (plaintiff "admitted the underlying conduct. . . . . [and] [b]ecause [he] has not shown that there is a genuine issue about the correctness of the outcome of his disciplinary proceeding, his Title IX claim fails.").

As was first identified in *Yusuf* and then re-affirmed by numerous federal courts, under a Title IX erroneous outcome theory "the claim is that the plaintiff was innocent and wrongly found to have committed an offense." *See Yusuf*, 35 F.3d at 715. It must follow, then, that

6

Mobus cannot succeed on his Title IX claim at trial unless he can first establish that he is innocent of the underlying sexual misconduct for which he was found responsible by the Committee. Evidence as to the truth of the allegations concerning that underlying sexual misconduct is therefore directly relevant to the question of innocence and must be admissible at trial.

    **II.**    **Mobus's Reliance on the "Articulable Doubt" Standard Applied to Dispositive Motions is Misplaced and Cannot be the Standard Applied at Trial.**

In the Motion, Mobus advocates for an inappropriately low standard of proof at trial on the first element of his Title IX erroneous outcome claim, arguing that he merely needs to articulate "some level of doubt" as to the accuracy of the Committee's determination that he engaged in sexual misconduct. Memorandum in Support of Plaintiff's Motion in Limine to Preclude a Retrial of the Underlying Proceedings (ECF No. 245-1), pp. 2–3.[1] Mobus bases this argument on cases limning the standard applied to *dispositive motions* involving Title IX erroneous outcome claims. *See id.* (citing cases). While it may be sufficient at the dispositive motion stage to allow a plaintiff's claim to survive where some "articulable doubt" is presented on the issue of innocence (and where all reasonable inferences must be drawn in the light most favorable to the non-moving party), such an approach would be manifestly unreasonable at trial. Applying the standard proposed by Mobus at trial would completely ignore the most basic requirement for a successful Title IX erroneous outcome claim, i.e., that the disciplinary proceeding was *in fact* erroneous because the disciplined student was *in fact* innocent of the alleged misconduct. *See Yusuf*, 35 F.3d at 715.[2]

---

[1]     Mobus advocates for the application of this "articulable doubt" standard of proof in his proposed jury instructions, which should be rejected for the reasons identified in this Opposition. *See* Plaintiff's Proposed Jury Instructions (ECF No. 264), Plaintiff's Proposed Instruction No. 14 at pp. 24–25.

[2]     Moreover, the cases from the First Circuit relied upon by Mobus for his argument that the Court should not consider evidence concerning the truth of the underlying sexual misconduct allegations are inapposite because they did not address that issue in the context of a Title IX erroneous outcome claim. *See Havlik v. Johnson & Wales*

7

To illustrate this point, consider a situation where a plaintiff had been found responsible by a college for having non-consensual sex with a complainant and later sues the college under a Title IX erroneous outcome theory. During the course of discovery in the litigation, the college obtains and authenticates text messages that plaintiff sent to a friend in which plaintiff admits to having sex with the complainant in the underlying disciplinary proceeding while complainant was "passed out, drunk," and which include photographs of the complainant in an undeniable state of incapacitation. Confronted with this evidence at deposition, the plaintiff then admits to having intercourse with the complainant without consent, while complainant was incapacitated. Under Mobus's proposed trial standard, the plaintiff's admission of guilt (and concomitant inability to establish innocence) would have no consequence. According to Mobus, the plaintiff could satisfy the first element of a Title IX erroneous outcome claim simply by pointing to "flaws" or "weaknesses" in the way the college conducted its disciplinary proceedings or claiming that the college's personnel "mishandled" their functions, *irrespective of the plaintiff's guilt*. To be clear: under Mobus's proposed trial standard, a plaintiff *who has admitted to the underlying sexual misconduct* could still prove a Title IX erroneous outcome claim and be awarded damages, *despite the lack of any actual error in the outcome* of the disciplinary proceedings. That cynical and deeply troubling view simply cannot be the case, nor is it the law.

Not only would Mobus's proposed trial standard defy logic and contravene the well-established standard of *Yusuf*, but it would also contravene the very intent of Title IX. Under Mobus's proposed trial standard, students who have committed rape can not only avoid the

---

*Univ.*, 509 F.3d 25, 34–36 (1st Cir. 2007) (breach of contract); *Doe v. Brown Univ.*, 210 F. Supp. 3d 310, 330–31 (D.R.I. 2016) (breach of contract); *Gomes v. Univ. of Maine Sys.*, 365 F. Supp. 2d 6 (D. Me. 2005) (breach of contract, Section 1983, and tort claims). Defendant does not contend that evidence concerning the truth of the underlying sexual misconduct allegations against Mobus are relevant to Mobus's claims for breach of contract, rather, such evidence goes directly to the proof required for Mobus to establish his Title IX claim based on an erroneous outcome theory of liability.

consequences of their actions, but also may recover damages from an institution that *correctly* determined their culpability. The fundamental purpose of Title IX is "[t]o avoid the use of federal resources to support discriminatory practices and to provide individual citizens effective protection against those practices." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 286 (1998) (internal quotation marks and citation omitted). To ensure equal opportunity to educational opportunities as required by Title IX, colleges and universities are obligated to investigate allegations of sexual misconduct and sexual harassment. *See* 34 C.F.R. § 106.45 (describing educational institutions' obligations for processing formal complaints). To allow a student who has *in fact* committed misconduct to nonetheless recover damages based on the existence of alleged "procedural flaws" would contravene the essential purpose of Title IX.

This Court should strongly reject Mobus's invitation to adopt an unsuitable standard of proof to be applied to his Title IX erroneous outcome claim at trial and should instead adopt a trial standard that is grounded in case law and logic—that, in order to satisfy his Title IX erroneous outcome claim, Mobus must first prove that the outcome was in fact erroneous, i.e., that he was innocent of the underlying sexual misconduct. To that end, evidence of the veracity of the allegations of the underlying sexual misconduct must be admitted because it is directly relevant to whether or not Mobus was, or was not, innocent of the sexual misconduct for which he was found responsible.

## CONCLUSION

For the foregoing reasons, the Court should deny Mobus's Motion in Limine to Preclude a Retrial of the Underlying Proceedings.

<table>
<tr><td>

Dated: February 18, 2021

</td><td>

**BARD COLLEGE**

By its attorneys,

/s/ Scott A. Roberts
Scott A. Roberts (BBO No. 550732)
    sroberts@hrwlawyers.com
Arielle B. Kristan (BBO No. 677048)
    akristan@hrwlawyers.com
HIRSCH ROBERTS WEINSTEIN LLP
24 Federal Street, 12th Floor
Boston, Massachusetts 02110
(617) 348-4300

</td></tr>
</table>

**CERTIFICATE OF SERVICE**

    I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on February 18, 2021.

    /s/ Scott A. Roberts
    Scott A. Roberts